PEYOTE WAY CHURCH OF GOD, INC., Plaintiff-Appellant,

v.

William F. SMITH, Attorney General of the United States and Jim Mattox, Attorney General of the State of Texas, Defendants-Appellees.

No. 83-1587.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1984.

Richard A. Allen, Raymond E. White, American Civ. Liberties Union, Dallas, Tex., for plaintiff-appellant.

Jim Mattox, Atty. Gen., Leslie A. Benitez, Charles A. Palmer, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

William F. Smith, Atty. Gen., John T. Bannon, Jr., U.S. Dept. of Justice, Crim. Div., Washington, D.C., for federal defendants.

Elizabeth S. Bernstein, Dept. of Justice, Window Rock, Ariz., for amicus curiae Navajo Nation.

Before BROWN, GEE, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Under both federal and Texas law, the possession or distribution of peyote is a criminal act. The Peyote Way Church of God, Inc. ("the Church") seeks a declaration that these statutes are unconstitutional because they deny it freedom of religion, infringe the equal protection clause by denying to it the exemption accorded to members of the Native American Church, and deny it due process by making an arbitrary distinction between it and the Native American Church. By summary judgment, the district court upheld the constitutionality of

both federal and state statutes. In the face of the Church's declaration that it considers peyote divine, an embodiment of the deity, and the use of peyote a sacrament, the record does not show a compelling state interest in denying its members the right to use peyote in religious ceremonies or that the denial was narrowly drawn to attain the important governmental purpose. Hence, we remand for further proceedings to determine whether the statutory proscriptions deny to members of the Church the right freely to exercise their religion.

## I.

The district court rendered summary judgment in favor of the defendants. We may sustain that ruling only if there is no "genuine issue as to any material fact." [1] In making this determination, any inferences to be drawn from the evidentiary record must be viewed in the light most favorable to the Church.[2] We recite therefore the Church's version of the facts.

In 1948 Immanuel P. Trujillo, currently the President of the Church, became a member of the Native American Church, a peyotist religion that admits only persons whose ethnic descent is at least 25% derived from American Indian stock and their spouses (whether Indian or not). Objecting to this racial exclusion, Trujillo joined others in the 1960's in founding an "all-race group" within the Native American Church. Later, he became dissatisfied with what he viewed as continuing discrimination by the national governing body of the Native American Church against the non-Indian members of the all-race group and with that church's failure to recognize the teachings of Joseph Smith, and he became increasingly aware of the cultural and educational differences between the all-race group and the main membership. With

others, Indian and non-Indian,[3] he left the Native American Church about 1966 and established a church that evolved into the Peyote Way Church.

The Church professes what it describes as a Christian peyotist religion, basing its theology on the Bible, the Book of Mormon, the doctrine and covenants of the Church of Jesus Christ of the Latter-Day Saints, and its own bylaws and points of order. Members of the Church ingest peyote as a sacrament, and worship it as the embodiment of God, hence a deity. The single place of worship is located on a ranch in the southern Arizona desert.

Peyote is a small spineless cactus that grows along the Rio Grande River. Its stems have jointed tubercules or "buttons" that, when ingested, have a hallucinogenic effect. Peyote can be found in quantities sufficient for the Church's practices only in southern Texas. This drug, the Church asserts, enables its members to reach an awareness of the presence of God within them and to examine their consciences. They ingest it only in a sacramental tea on the first Sunday of every month or during a religious ritual called a spirit walk, a trip into the wilderness to commune with the Creator by either one member alone or two or three members together. A member may participate in such a spirit walk once every two or three months.

Today the Church has five resident and about 150 non-resident members, of whom only about 50 are active. Its doctrine emphasizes simplicity, sobriety, and hard work. The Church is self-supporting, deriving most of its non-donated income from the sale of pottery. Among other community activities, it operates a "rescue mission" for runaways, alcoholics, and drug addicts.

The Church contends that it strives to maintain strict controls over the possession

---

1. Fed.R.Civ.P. 56(c).

2. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

3. We use these terms in the sense used by the Church in its briefs. According to it, an "Indi-

an" is anyone who traces at least 25% of his ancestry to any of the native American tribes whatever the other 75% of his ancestry. Correspondingly, anyone whose identifiable native American ancestry constitutes less than 25% of his forbears is a "non-Indian."

and distribution of peyote. It states that it keeps records of peyote receipts and distributions; limits the number of people who have control over its peyote supply; imposes stringent membership requirements (including a 48-hour fast period and actual presence at the Church); records memberships in the local county clerk's office; and requires sincerity of belief for the receipt of peyote. The Church has also expressed willingness to cooperate with federal and state agencies in the control of peyote, to conform to any regulations restricting the use of peyote to religious ceremonies, and to maintain such records of its possession and use as the two governments may require.

The Church distributes and uses peyote only for religious purposes, and any other use is considered sacrilegious. It forbids the use of controlled substances other than peyote. It does not distribute peyote to any person under the age of eighteen years. In view of the dispute concerning these facts, we disregard innuendo by the government about the character of Trujillo and disputed factual assertions that members of the Church distribute peyote to non-members. We do accept as proved, because of testimony by Church members, the facts that the Church does distribute small quantities of peyote to some non-members, to alcoholics in the course of treatment, and to persons who are seeking membership in the course of determining their interest in becoming Church members.

The Church seeks a judgment declaring that the federal statutes prohibiting the possession, use, and distribution of controlled substances [4] are unconstitutional under the first and the substantive due

process clause of the fifth amendment to the United States Constitution as applied to the possession and use of peyote by the Church's members; that the statutes of Texas [5] when thus applied are also unconstitutional under the first and fourteenth amendments to the United States Constitution and the freedom of religion clause of the Texas Constitution; [6] that the federal regulation granting an exemption from the federal peyote laws to the Native American Church, is unconstitutional on its face and as applied to Church members; [7] and that the Texas statutory exemption is also unconstitutional. The Church also seeks preliminary and permanent injunctions against enforcement of these federal and Texas laws and regulations.

The district court held an evidentiary hearing on the Church's motion for a preliminary injunction, denied the injunction, then later granted the defendants' motions for summary judgment, without assigning reasons. Although the Federal Rules of Civil Procedure do not state that evidence adduced at a hearing may support a summary judgment, we have affirmed judgments resting on such evidence when the testimony is uncontradicted with the result that the factual basis for judgment admits no genuine controversy about material matters.[8] For purposes of the present appeal, we must, however, assume the correctness of the Church's version of all disputed facts.[9] On the basis of this assumption, we discuss the legal issues without the benefit of an opinion or legal conclusions from the trial court. While the Federal Rules of Civil Procedure do not command a district court to set forth its reasons for rendering summary judgment, we have repeatedly urged district courts to do so,[10] for appel-

---

4. 21 U.S.C. §§ 841 and 844 (1976).

5. Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.032, 4.042, and 4.041 (Vernon 1976 & Supp.1982).

6. Article I, § 6.

7. Citing 42 U.S.C. § 1981 (1976) and the fifth amendment to the United States Constitution.

8. *Hayden v. First Nat. Bank of Mt. Pleasant, Tex.,* 595 F.2d 994 (5th Cir.1979); *Arrington v. City of Fairfield, Alabama,* 414 F.2d 687 (5th Cir.1969).

9. *Walker v. U-Haul Co. of Mississippi,* 734 F.2d 1068 (5th Cir.1984); *Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir.1978).

10. *Cooper v. General Motors Corp.,* 651 F.2d 249 (5th Cir.1981); *Jot-Em-Down Store (JEDS) Inc. v. Cotter and Co.,* 651 F.2d 245 (5th Cir.1981). *See generally,* C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2575 (1971); 5A J. Moore, Moore's Federal Practice § 5208 (1980).

late review should not be based on speculation concerning the reason for a trial court's cryptic judgment or exhaustion of all possible bases for it. For these reasons we have frequently remanded cases to obtain the trial court's reasoning. We do not do so in this case only because the issues have been fully briefed and argued, and we consider that the parties and the district court should have guidance concerning applicable constitutional principles.

## II.

The Controlled Substances Act of 1970 prohibits the distribution, the possession with intention to distribute, and the possession without a prescription of a number of substances, including peyote.[11] Peyote is classified as a Schedule I controlled substance.[12] The statute permits the Attorney General to classify other substances in Schedule I if three findings are made: the substance has a high potential for abuse; it has no currently accepted medical use in treatment in the United States; and there is a "lack of accepted safety" for use of the substance under medical supervision.[13] Presumably the listing of peyote in Schedule I implies a congressional finding that peyote meets all of these criteria, including

its dangerous qualities even when used under medical supervision because of the "lack of accepted safety."

The major active ingredient in peyote is mescaline. Mescaline is a hallucinogen whose effects are similar to those of lysergic acid diethylamide (LSD). It may produce alteration of consciousness, evidenced by confused mental states and dreamlike revivals of past traumatic events, alteration of sensory perception, evidenced by visual illusions and distortion of space and perspective, alteration of mood, evidenced by anxiety, euphoria, or ecstasy, alteration of ideation, evidenced by impairment of concentration and intelligence, and alteration of personality, evidenced by impairment of conscious and the breakdown of cultural and social inhibitions.[14] Peyote may cause such severe adverse reactions as psychosis and suicide. The potential adverse effects of peyote are minimized, however, when it is used in a controlled setting, the subject is prepared for its use, and the subject expects sensations of calmness and euphoria.

The Federal Controlled Substances Act contains no exemption from its prohibitions. However, the Attorney General has, with apparent congressional approval,[15]

11. 21 U.S.C. §§ 841 and 844 (1976).

12. 21 U.S.C. § 812(c)(2) (1976).

13. *See* 21 U.S.C. § 812(b)(1)(A)(B) and (C) (1976).

14. *See* 35 Fed.Reg., 14,791 (1970).

15. Drug Abuse Control Amendments of 1970, Hearings before the Subcommittee on Public Health & Welfare of the House of Representatives, 91st Cong. 2d Sess. 117–18 (1970). These hearings contain the following colloquy:

Mr. [Congressman] Satterfield. I have one other question. I recall when we were discussing dangerous drugs a few years ago, the question came up about the Native American Church involving Indians in the west who use and have for centuries used peyote in connection with religious services. It is my understanding that they enjoy an exemption under the current law.

My question is whether in any of the bills we have before us, if passed, would in any way affect this present exemption?

Mr. Sonnenreich. [Director of Bureau of Narcotics and Dangerous Drugs] In the first instance, Mr. Satterfield, the Native American Church did ask us by letter as to whether or not the regulation, exempting them by regulation, would be continued and we assured them that it would because of the history of the church. We presently are involved in another hearing regarding another church that is a non-Indian church that is seeking the exemption and the order is going to be published, I believe, either today or tomorrow denying them the same exemption as the Native American Church.

We consider the Native American Church to be sui generis. The history and tradition of the church is such that there is no question but that they regard peyote as a deity as it were, and we'll continue the exemption.

Mr. Satterfield. You do not see anything in the Senate bill that would make this impossible?

Mr. Sonnenreich. No. Under the existing law originally the Congress was going to write in a specific exemption but it was then decided that it would be handled by regulation and

adopted a regulation making the statute inapplicable "to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church." [16]

The Texas statute contains a similar exemption.[17] The Native American Church admits to membership only Indians and their spouses, whether Indian or not. It has twenty-three chapters, and a membership variously estimated as 250,000 to 400,000 persons.

### III.

Texas makes an argument not made by the United States, that the Church lacks standing to assert a claim against it because there is, as to it, no present case or controversy, and, in the absence of such a concrete dispute, we lack jurisdiction.[18] Texas contends that the Church has failed to show the imminence of prosecution of its members. The Church supports the existence of a genuine dispute with Texas on the contention that it can obtain peyote sufficient for its needs only in Texas and its members desire to travel to Texas to do so, free from fear of arrest. It asserts that in 1980 three of its members were arrested in Richardson, Texas, for possessing peyote, and that, although these charges were later dismissed, the constant threat of arrest exists. The Church also contends in a pleading, unsupported by any affidavit or deposition, that one of its nonresident members was arrested in Webb County in 1983 for possession of peyote, as well as trespassing, and was released on bond.

"Persons having no fears of state prosecution except those that are imaginary or speculative ... may not challenge a state criminal statute because, in the absence of actual or imminent peril, they lack standing." [19] A litigant may not, therefore, assert the unconstitutionality of a state criminal statute "merely because he desires to wipe it off the books or even because he may some day wish to act in a fashion that violates it." [20]

To establish standing for a challenge to the constitutionality of a state criminal statute, a litigant "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." [21] A person who desires to violate a criminal statute that he considers unconstitutional need not, however, disobey the law and await his prosecution before challenging its unconstitutionality.[22]

Indeed, a person who wishes to invoke federal jurisdiction to challenge the constitutionality of a state criminal statute may lose his right to do so if he waits until he has been charged. Once the state has charged a person with a state offense, the accused loses the right to a federal forum if the state permits him to raise the constitutional issue in the state criminal proceed-

---

we intend to do it the same way under this law.

Mr. Satterfield. Thank you. I have no other questions.

See also Remarks of Congressman Harris, 111 Cong.Rec. 15977 (1965) with reference to the predecessor 1965 bill.

**16.** 21 C.F.R. § 1307.31 (1984) reads:

The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annually and to comply with all other requirements of law.

**17.** Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.11(a) (Vernon Supp.1982–83).

**18.** U.S. Const. art. III, § 2.

**19.** *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669, 674 (1971).

**20.** *KVUE v. Austin Broadcasting Corp.,* 709 F.2d 922, 928 (5th Cir.1983).

**21.** *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895, 906 (1979).

**22.** *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505, 514 (1974).

ing.[23] A federal decision at that juncture would interfere with the state's criminal process. Thus, the right to seek a federal forum for a challenge of a state statute as violative of the federal constitution is constricted. The challenger may not sue before he is truly injured; yet he may not wait until he is charged with a crime. He may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction.

▉ The Church offered evidence that its members have come to Texas for peyote and have been arrested. It also offered evidence that its members desire to do so again. The state does not assert that it will not enforce the statute. The parties' positions are plainly adverse and harm to the members of the Church is imminent when evaluated in the light of the state's position. The Church has a personal stake in the constitutionality of the Texas statute because enforcement of that statute will directly affect the freedom with which its members may fulfill their professed religious commitment. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' "[24]

The Church, therefore, presents a case or controversy in the constitutional sense. "[T]he conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." [25]

▉ Texas also contends that we should abstain from deciding the issues and allow them to be decided by a Texas court.[26] But we abstain from decision in such circumstances "only when the state court's determination 'will eliminate or substantially modify a federal constitutional question.' " [27] The state argues a Texas court might conceivably construe the statute narrowly to avoid the constitutional issue. If indeed "the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." [28] But when, as here, a state statute is clear on its face and capable of one and only one reasonable interpretation, abstention is improper.[29]

The state also suggests that a Texas court might declare the statute unconstitutional under state law. The theoretical possibility that Texas courts might read its constitution to restrict state power more narrowly than the federal constitution does, however, is unsupported by any cita-

**23.** *Younger v. Harris,* 401 U.S. 37, 49, 91 S.Ct. 746, 753, 27 L.Ed.2d 669, 674 (1971); *see Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

**24.** *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895, 906 (1979) (quoting *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201, 210 (1973).

**25.** *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895, 904 (1979) (quoting *Railway Mail Assn. v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072, 2076 (1945).

**26.** Texas relies upon *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643,

85 L.Ed. 971 (1941); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Harris County Commissioner's Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32, 39 (1975); *City of Meridian v. Southern Bell Telephone and Telegraph Company,* 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

**27.** *KVUE v. Austin Broadcasting Corp.,* 709 F.2d 922, 931 (5th Cir.1983); *see Nissan Motor Corp. in USA v. Harding,* 739 F.2d 1005 (5th Cir.1984).

**28.** *Harris County Commissioner's Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32, 39 (1975).

**29.** *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

tion of authority or reasoned analysis, and is merely an invitation to avoid deciding an important federal constitutional issue. We respond by facing the issue.

## IV.

■ The free-exercise-of-religion clause of the first amendment to the United States Constitution protects both freedom to believe and freedom to act. Freedom of belief "is absolute [30] but, in the nature of things [freedom to act] cannot be." [31] " ... [T]he freedom to act," therefore, "even when the action is in accord with one's religious conviction, is not totally free from legislative restrictions." [32] Conduct dictated by religious belief may be regulated or forbidden if the limitation is essential to accomplish a compelling governmental interest in the regulation of a subject within the state's constitutional power [33] and if the attendant burden on religious observance does not exceed the least burdensome method of accomplishing that purpose without infringing first amendment rights. [34]

There is ample precedent applying this analysis to the question before the court. We begin with *Leary v. United States*, [35] in which this court held that the federal drug control laws relating to marijuana serve a compelling governmental purpose to avert a "substantial threat to public safety, peace or order." In reaching this result, we distinguished the decision of the California Supreme Court in *People v. Woody*, [36] holding the use of peyote by members of the

Native American Church constitutionally protected, on the basis that peyote played a central role in the ceremony and practice of that church. Leary had testified that he used marijuana only as a means for practicing his religion, rather than as a formal requisite of his faith. Its use was only one of many means to practice that religion, and deprivation of it would not have prevented him from achieving or practicing his religious beliefs. Leary, unlike the Church here, sought unrestricted freedom to possess and use the controlled substance in any manner that his religious beliefs permitted.

The *Leary* opinion distinguished the federal exemption for the use of peyote by the Native American Church, stating:

> The exemption accorded the use of peyote in the *limited bona fide* ceremonies of the *relatively small, unknown* Native American Church is clearly distinguishable from the private and *personal use* of marihuana by any person who claims he is using it as a religious practice. [37]

The federal government itself has drawn a similar distinction. In denying an exemption to the Church of the Awakening, it asserted that the use of peyote by that church was not essential or central to its religion, and distinguished the peyote sacrament in the Native American Church. In doing so it stressed "the overriding factor that peyote is essential and central to the religion is that without peyote their religion [of the Native American Church]

**30.** *Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

**31.** *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940).

**32.** *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563, 566 (1961).

**33.** *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

**34.** *Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983).

**35.** *Leary v. United States,* 383 F.2d 851 (5th Cir.1967), *reversed on other grounds,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *See also United States v. Spears,* 443 F.2d 895 (5th Cir. 1971), *cert. denied,* 404 U.S. 1020, 92 S.Ct. 693, 30 L.Ed.2d 669 (1972); *United States v. Hudson,* 431 F.2d 468 (5th Cir.1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 575, 27 L.Ed.2d 624 (1971).

**36.** 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964). *See also In re Grady,* 61 Cal.2d 887, 39 Cal.Rptr. 912, 394 P.2d 728 (1964).

**37.** *United States v. Leary,* 383 F.2d at 861, note 11 (emphasis added).

would not exist." [38] The same distinction may be drawn between the use of marijuana considered in *Leary* and the use of peyote by the Peyote Way Church. *Leary* does not, therefore, decide the issues presented here.

In addition to California, the courts of Oklahoma [39] and Arizona [40] have held that state laws forbidding the possession of peyote are unconstitutional as applied to its possession by members of the Native American Church in religious ceremonies. [41] These state decisions were based on the thesis that "the State did not present evidence which would sustain the finding of a state interest in regulation compelling enough to prohibit the exercise of the religious practice of peyotism by the Native American Church and its members." [42] The record in the present case is devoid of either such evidence or of evidence that prosecution of the possession or distribution of peyote by the Church is necessary to achieve the government's purpose.

■ The exemption granted both by federal and Texas law to the ritual use of peyote by the Native American Church tends, as the Church suggests, to negate the existence of a compelling state interest in denying the same use to it. [43] In the absence of evidence, we cannot simply assume that the psychedelic is so baneful that its use must be prohibited to a group of less than 200 members but poses no equal threat when used by more than 250,-000 members of the Native American Church.

For these reasons, we do not consider summary judgment to be warranted. Expressing no opinion on the ultimate merits, we remand for further proceedings consistent with this opinion, with regard to the first amendment claim.

## V.

The Church contends that to deny it an exemption accorded to the Native American Church creates a distinction forbidden by the equal protection clause. The federal regulation and the Texas statutory exemption plainly accord a benefit to the Native American Church that is denied all others. The persons who are deprived of the benefit are both non-Indians and those Indians who do not belong to the Native American Church. No other circuit court has considered this argument, although the Second Circuit avoided it by construing the federal exemption to apply to any bona fide religion that uses peyote for sacramental purposes and regards it as a deity. [44] The district court opinion in that case, *Native American Church of New York v. United*

---

**38.** Department of Justice Hearing, 35 Fed. Register No. 185, 14789, 14790 (1970).

**39.** *Whitehorn v. State,* 561 P.2d 539 (Okla.Cr. App.1977).

**40.** *State v. Whittingham,* 19 Ariz.App. 27, 504 P.2d 950 (Ariz.Ct.App.1973).

**41.** The courts of two states, however, have upheld the constitutionality of peyote regulation. In *State v. Big Sheep,* 75 Mont. 219, 243 P. 1067 (1926), the Montana Supreme Court upheld the constitutionality of a state statute making it unlawful for any person to sell, furnish, give away, or have in his possession peyote as applied to a member of the Native American Church. The court based its decision on the "power of the legislature to determine whether the practice of using peyote is inconsistent with the good order, peace and safety of the state." Similarly, in *State v. Bullard,* 267 N.C. 599, 148 S.E.2d 565 (1966), the North Carolina Supreme Court upheld the constitutionality of an almost identical state statute on the ground that the first amendment does not authorize a person, "in the exercise of his religion to commit acts which constitute threats to the public safety, morals, peace and order." The court concluded that, because of the hallucinatory nature of peyote, the defendant's position could not be sustained either "in law [or] in morals."

**42.** *Whitehorn v. State, supra* note 39, 561 F.2d at 544.

**43.** Both Colorado (Colo.Rev.Stat. § 12–22–317(3) (Supp.1982)) and New Mexico (N.M.Stat. Ann. § 30–31–6(D) (Supp.1980)) exempt the use of peyote by any bona fide peyotist religion from their narcotics laws.

**44.** *Native American Church of New York v. United States,* 468 F.Supp. 1247 (S.D.N.Y.1979), *aff'd* 633 F.2d 205 (2d Cir.1980).

*States,* contains a full exposition of the exemption's legislative history. We express no opinion concerning our concurrence or disagreement with those views. We also express no opinion concerning the government's argument that the political relationship of the federal government to the Indian tribes and to individual Indians supports a statutory classification that accords to Indians and their Church a privilege denied to all others.

The record contains little evidence and no findings that would support a conclusion concerning the equal protection and the due process [45] issues raised by the Church. Although we recognize the importance of these issues, a premature ruling on them without an adequate record may adversely affect other parties than those now before the court. If the first amendment claims of the Church are sustained, it will be unnecessary for us to reach them. If the first amendment claims are rejected, the district court should make such findings of fact as may be necessary to support its decision on the other constitutional issues. For these reasons, we do not now consider them.

REMANDED for further proceedings consistent with this opinion.

---

**45.** In *Kennedy v. Bureau of Narcotics and Drugs,* 459 F.2d 415 (9th Cir.1972), the Ninth Circuit found the government's refusal to exempt another peyote-centered group, the Church of the Awakening, a denial of substantive due process because the exemption only of the Native American Church "creates an arbitrary classification that cannot withstand substantive due process attack." It refused, however, to declare the regulation unconstitutional because the Church of the Awakening sought only to obtain the same exemption for itself but not for other churches that use peyote in bona fide religious ceremonies. "The new classification fares no better constitutionally than the old one." *Id.* 459 F.2d at 417.