# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3359

_____

Albert Krantz, Ron Decker,     *
Donald Sweat, on behalf of     *
themselves and others similarly     *
situated,     *
    *
         Appellants,     *
    *
      v.     *
    *
City of Fort Smith, Arkansas;     *
City of Van Buren, Arkansas;     *
City of Alma, Arkansas; City of     *
Dyer, Arkansas,     *
    *
         Appellees.     *
    *    Appeal from the United States
------------------------------------     *    District Court for the
    *    Western District of Arkansas
Albert Krantz; Ron Decker;     *
Donald Sweat; on behalf of     *
themselves and others similarly     *
situated,     *
    *
         Appellants,     *
    *
      v.     *
    *
City of Alma, Arkansas; City of     *
Dyer, Arkansas,     *
    *
         Appellees.     *

Submitted:   February 11, 1998

Filed:   November 30, 1998

_____

Before McMILLIAN and HANSEN, Circuit Judges, and DAVIS,[1] District Judge.

_____

McMILLIAN, Circuit Judge.


Plaintiffs, members of the Twentieth Century Holiness Tabernacle Church ("the Church") who allegedly have been arrested or threatened with legal injury pursuant to any of four specific municipal ordinances[2] (collectively referred to as "the ordinances"), appeal from final judgments entered in the United States District Court for the Western District of Arkansas, dismissing with prejudice their action pursuant to 42 U.S.C. § 1983 against the Cities of Alma, Dyer, Fort Smith, and Van Buren, Arkansas (collectively defendants). Krantz v. City of Alma, Nos. 95-2135/95-2136 (W.D. Ark. Nov. 27, 1996) (Krantz) (judgment dismissing with prejudice complaint against Alma, Dyer, and Van Buren); id. (July 30, 1997) (memorandum opinion and judgment dismissing with prejudice complaint against Fort Smith). The district court granted summary judgment for defendants on plaintiffs' First Amendment claims seeking a declaration that the ordinances are unconstitutional because they prohibit plaintiffs from placing religious literature under the windshield wipers of unattended vehicles parked

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, sitting by designation.

[2]Alma, Ark., Ordinance No. 83-3; Dyer, Ark., Ordinance No. 83-4; Fort Smith, Ark., Municipal Code, art. III, § 14-51; and Van Buren, Ark., Ordinance No. 5-1983.

on public property. Id. (Nov. 27, 1996) (memorandum opinion) (hereinafter "slip op."). For reversal, plaintiffs now argue that the district court erred in holding as a matter of law that the ordinances (1) are not facially invalid on First Amendment overbreadth grounds, (2) are not unconstitutional as applied to plaintiffs, and (3) were not enacted with a discriminatory purpose. In addition, defendant the City of Dyer challenges plaintiffs' standing. For the reasons stated below, we hold that plaintiffs have standing to sue the City of Dyer. We further hold that the ordinances are unconstitutional because they are facially overbroad restrictions on free speech. Accordingly, we do not reach the remaining issues raised on appeal. The judgments of the district court are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

## Background

Each of the ordinances makes it a misdemeanor for any person to place a handbill or advertisement on any other person's vehicle parked on public property within city limits, unless an occupant of the vehicle is willing to accept the handbill or advertisement. For example, the Van Buren ordinance provides in relevant part:

> SECTION 3. It shall be unlawful for any person to place or deposit any commercial or non-commercial handbill or other hand-distributed advertisement upon any vehicle not his own, or in his possession, upon any public street, highway, sidewalk, road, [or] alley within the City of Van Buren, providing, however, that it shall not be unlawful upon any such street or other public place for a person to hand out and distribute to the receiver therefor, any handbill to any occupant of the vehicle that is willing to accept it.

Slip op. at 10 (quoting Van Buren, Ark., Ordinance No. 5-1983).[3]

---

[3]The ordinances of the other three defendants contain substantially the same language as Section 3 of the Van Buren ordinance. Krantz v. City of Alma, Nos. 95-

According to plaintiffs, "[i]n their effort to 'preach the gospel to every living person in the earth,'" associates of the Church distribute religious literature by placing handbills under the windshield wipers of unattended parked cars. Brief for Appellants at 2. Plaintiffs filed this action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983, alleging that the ordinances are facially unconstitutional, that they are selectively enforced only against members of the Church, and that they were enacted with the discriminatory purpose of stopping the Church's handbilling activities, in violation of plaintiffs' First Amendment rights of free speech and free exercise of religion. The district court certified a plaintiff class, defined as individuals who have been arrested, have been threatened with arrest, or have refrained from distributing handbills because they reasonably believe they will be arrested under one of the ordinances. Plaintiffs moved for declaratory judgment, and defendants filed cross-motions for judgment on the pleadings and summary judgment. Plaintiffs thereafter amended their complaint, adding two new claims. Defendants then filed motions for judgment on the pleadings or partial summary judgment addressing plaintiffs' newly added claims.

By orders dated November 27, 1996, and July 30, 1997, the district court granted defendants' motions for judgment on the pleadings and summary judgment and denied plaintiffs' motion for declaratory relief, which the court treated as a motion for judgment on the pleadings. The district court held that defendants were entitled to judgment as a matter of law on plaintiffs' claim that the ordinances are facially invalid on overbreadth grounds. The district court reasoned:

> The Court is not altogether comfortable with the notion that these ordinances actually regulate handbilling – and, therefore, speech or

2135/95-2136, slip op. at 10 n.1 (W.D. Ark. Nov. 27, 1996) (memorandum opinion) (hereinafter "slip op.").

expression. To the contrary, the Court believes these ordinances regulate the conduct of littering – the physical act of throwing down or depositing a piece of paper on public and private property. Nevertheless, since the Court believes that the <u>effect</u> of the ordinances – at least to some limited extent – can be construed as a limitation on handbilling activities, and since handbilling is an expressive activity protected by the First Amendment, the Court is of the view that the ordinances have some impact on expressive conduct.

Slip op. at 11.

The district court went on to state that it would analyze the First Amendment overbreadth issue using the constitutional standard applicable to public forums because the ordinances appeared to regulate both public and private forum speech. <u>Id.</u> at 14-15. The district court noted that written forms of expression in public forums are subject to reasonable time, place or manner restrictions, but that the restrictions must (1) be content-neutral, (2) be narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels of communication. <u>Id.</u> at 15. The district court first determined that the ordinances are content-neutral. <u>Id.</u> at 16. The district court next concluded that the ordinances are narrowly tailored to serve a significant governmental interest. On that point, the district court noted that, although defendants are not required to show that their ordinances are the least restrictive means of accomplishing their objectives, they may not regulate expression so as to substantially burden more speech than necessary to advance legitimate governmental interests. <u>Id.</u> at 17 (citing <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 798-800 (1989) (<u>Ward</u>)). The district court opined that the prevention of litter is a legitimate governmental interest, <u>id.</u> at 19 ("It can certainly be said – without much danger of contradiction – that unsightly litter is blight in this country the eradication of which requires the expenditure of limited local government resources and presents a myriad of public health and safety concerns."), and then went on to hold that "the ordinances are narrowly tailored to achieve a significant government interest." <u>Id.</u> at 20. Turning

-5-

to the third and final requirement, the district court determined that the ordinances leave open ample alternative channels of communication because "[t]he alternative channels of communication are numerous and none have been foreclosed by defendants' ordinances." Id. at 21. Accordingly, the district court concluded, "plaintiffs' overbreadth claims against defendants are without merit." Id. at 22.

The district court further held that defendants are entitled to judgment as a matter of law on the issues of whether the ordinances are unconstitutionally vague, id. at 23-25, whether they regulate religious conduct within the meaning of the free exercise clause, id. at 25-26, and whether they are unconstitutional as enacted or applied, id. at 26-28; Krantz, slip op. at 5 (July 30, 1997) (addressing claims against Fort Smith). After the district court entered judgment for defendants, plaintiffs appealed the district court's disposition of the First Amendment issues. Defendants have resisted plaintiffs' appeal on the merits and, as noted above, the City of Dyer has additionally challenged plaintiffs' standing.

**Discussion**

Plaintiffs' standing to bring claims against the City of Dyer

The City of Dyer argues that plaintiffs lack standing to sue Dyer because no one from the Church has been arrested, has been threatened with arrest, or has refrained from handbilling because of the Dyer ordinance. Under the standard applicable to this type of First Amendment challenge, we hold that plaintiffs have standing to sue the City of Dyer for violating their First Amendment rights. Plaintiffs in the present case allege that, as part of their religion, they believe in, and engage in, the practice of distributing religious literature throughout the world and that they have refrained from leaving literature on unattended parked cars within the City of Dyer because they fear prosecution. Members of the Church have in the past engaged in the precise activity banned by the Dyer ordinance and, although no criminal proceeding is pending in Dyer,

plaintiffs have presented evidence that members of the Church fear arrest or the threat of arrest should they engage in such activity in Dyer. See, e.g., Appellants' Appendix at 74, 236, 239. The Dyer ordinance is virtually identical to those of the other defendants and, in fact, has been jointly defended with two of the other ordinances challenged in this litigation. We assume the City of Dyer would prosecute violators of its ordinance, given the opportunity, because it has vigorously defended the ordinance and has never suggested that it would refrain from enforcement. See Virginia v. American Booksellers Ass'n, 484 U.S. 383, 393 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state court prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

Steffel v. Thompson, 415 U.S. 452, 462 (1974).

Thus, upon careful review, we hold that plaintiffs have standing to bring this declaratory judgment action to challenge the Dyer ordinance because they have alleged and have sufficiently demonstrated an actual and well-founded fear that the law in question will be enforced against them. See id. (plaintiffs have standing to challenge facial validity of regulation, notwithstanding pre-enforcement nature of lawsuit, where

they allege an actual and well-founded fear that the law will be enforced against them); cf. Peyote Way Church of God, Inc. v. Smith, 742 F.2d 193, 198 (5th Cir. 1984) (holding that plaintiff church has standing to bring facial challenge to state statute under free exercise clause based upon "personal stake in the constitutionality of the [state] statute because enforcement of that statute will directly affect the freedom with which its members may fulfill their professed religious commitment"). We now turn to the merits of this appeal.

Facial challenge on First Amendment overbreadth grounds

Because the material facts relevant to plaintiffs' overbreadth challenge are not in dispute and were sufficiently set forth in the pleadings, it was appropriate for the district court to dispose of that issue on the parties' cross-motions for judgment on the pleadings.[4] We now review de novo the district court's decision to grant judgment on the pleadings for defendants. Franklin High Yield Tax-Free Income Fund v. County of Martin, 152 F.3d 736, 738 (8th Cir. 1998) (grant of judgment on the pleadings reviewed de novo). The question before the district court, and now before this court on appeal, is whether the ordinances are unconstitutionally overbroad and thus facially invalid as a matter of law.

Plaintiffs argue that defendants have failed as a matter of law to satisfy their burden of showing that the ordinances are narrowly tailored to serve a significant governmental interest and that they leave open ample alternative channels for communication of the same information. Plaintiffs suggest that defendants are precluded as a matter of law from relying on litter prevention as the basis for imposing a complete ban on plaintiffs' First Amendment activity. Plaintiffs cite, among other

---

[4]Plaintiffs filed a motion for declaratory judgment seeking a ruling that the ordinances are, as a matter of law, unconstitutionally overbroad and therefore facially invalid. Slip op. at 3. The district court elected to treat plaintiffs' motion as one for judgment on the pleadings. Id. at 4.

cases, <u>Schneider v. New Jersey</u>, 308 U.S. 147, 162-63 (1939) (<u>Schneider</u>) ("[T]he purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it.").

In response, defendants argue that the ordinances are not inconsistent with the Supreme Court's holding in <u>Schneider</u> because the activity addressed in that case (i.e., handing out leaflets person-to-person to willing passersby) differs significantly from the act of leaving a handbill on an unattended parked vehicle. Defendants further argue that nothing in the ordinances prevents plaintiffs from engaging in the type of handbilling protected under <u>Schneider</u>. Defendants also contend that there is no connection between the physical act of putting a handbill under the windshield wiper of a parked vehicle and the freedom to speak, write, print, or distribute information or ideas, which plaintiffs may do by numerous other means. While defendants concede that public streets and parking lots are public forums, they maintain that they have both the duty and the power to regulate activities affecting the safety and aesthetics of such public areas through direct or indirect regulation. In sum, they contend that the ordinances are narrowly tailored to serve a significant governmental interest and that the ordinances leave open ample alternative channels for communication.

We find it unnecessary to repeat the district court's thorough and instructive summary of the legal landscape in this First Amendment free speech context. Slip op. at 6-9 (discussing, among other cases, <u>Members of City Council v. Taxpayers for Vincent</u>, 466 U.S. 789 (1984)). We also agree with the district court that plaintiffs' overbreadth challenge is governed by the line of cases addressing reasonable time, place, or manner restrictions. <u>See</u> <u>id.</u> at 15. The three-part test for determining the constitutionality of a time, place, or manner restriction is accurately stated in the district court's opinion. <u>See</u> <u>id.</u> (citing <u>City of Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410 (1993) (<u>Discovery Network</u>); <u>Ward</u>, 491 U.S. at 798; <u>United States v. Kistner</u>, 68 F.3d 218, 221 (8th Cir. 1995)). While we further agree with the district court's

-9-

assessment that the ordinances are content-neutral under the first prong of the "reasonable time, place, or manner" test, we part company with the district court at the second stage of the inquiry. For reasons discussed below, we hold as a matter of law that the ordinances are not narrowly tailored to serve a significant governmental interest.

"'[T]he requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial interest that would be achieved less effectively absent the regulation' and the means chosen does not 'burden substantially more speech than is necessary to further' the city's content-neutral interest." Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1221 (8th Cir. 1997) (Excalibur Group) (quoting Ward, 491 U.S. at 799 (internal quotations omitted)), cert. denied, 118 S. Ct. 855 (1998). In considering whether the narrow tailoring requirement has been met in the present case, we are of the view that the Supreme Court's holding in Schneider is not directly on point, but is highly instructive. In Schneider, 308 U.S. at 162-63, the Supreme Court held that the governmental interest in preventing litter was insufficient to justify an ordinance that would have prohibited individuals from handing out literature to those willing to receive it. The Court in Schneider went on to note that a city has the power to punish individuals who throw leaflets on the ground, as opposed to those who hand leaflets out. Id.; accord Jews for Jesus, Inc. v. MBTA, 984 F.2d 1319, 1324 (1ˢᵗ Cir. 1993) ("littering is the fault of the litterbug, not the leafletter"). The Supreme Court then concluded in Schneider that "the public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution." 308 U.S. at 163.

Not long after Schneider was decided, the Supreme Court considered the constitutionality of an ordinance which made it unlawful in Struthers, Ohio, for any person to distribute to a person within a residence a handbill, circular, or advertisement, by knocking on the door or ringing the bell of the residence. Martin v. City of

Struthers, 319 U.S. 141 (1943) (Martin). The appellant in Martin, a follower of the Jehovah's Witnesses, was convicted of violating the Struthers ordinance and was ordered to pay a fine after she knocked on the door and summoned the resident of the home for the purpose of distributing religious literature. Id. at 142. The City of Struthers asserted that its ordinance advanced its legitimate governmental interests in protecting citizens from being disturbed in their homes and preventing burglars or other criminals from using such acts as a pretense for criminal activity. Id. at 144. The Supreme Court declared the Struthers ordinance facially invalid because it was not narrowly tailored to serve the city's legitimate goals. The Supreme Court observed: "While door to door distributors of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion." Id. at 145. The Supreme Court observed: "[t]raditionally the American law punishes persons who enter onto property of another after having been warned by the owner to keep off." Id. at 147. Similarly, the Supreme Court suggested, a regulation could make it unlawful to ring the bell of a householder who has indicated a desire not to be disturbed. Id. at 147-48. The Supreme Court concluded:

> Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas.
>
> . . . .
>
> A city can punish those who call at a home in defiance of the previously expressed will of the occupant and, in addition, can by

-11-

identification devices control the abuse of the privilege by criminals posing as canvassers. In any case the problem must be worked out by each community for itself with due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributers from the home.

Id. at 146-47 (footnote omitted); accord Rowan v. United States Post Office Dep't, 397 U.S. 728 (1970) (upholding as constitutional under the First Amendment a federal statute, enforceable by the Postmaster General, which allows householders to notify senders of pandering advertisements that future mailings are not wanted).

In Van Bergen v. Minnesota, 59 F.3d 1541 (8th Cir. 1995) (Van Bergen), this court considered the constitutionality of a regulation which banned certain automatic pre-recorded telephone solicitations made by "automatic dialing-announcing devices" or "ADADs." Under the facts in Van Bergen, a recipient of an ADAD telephone call had no means to reject the call beforehand or to notify the responsible party afterward that future calls were unwanted. This court carefully distinguished the circumstances of Van Bergen from Martin and held that the regulation was not unconstitutional.

Telephone calls from a live operator are more disruptive than door-to-door solicitors warned not to disturb, because the recipient must respond once to each caller. When the call is made by a live operator, however, the recipient has the opportunity to tell the operator, at any point in the conversation, that he does not want to hear from the calling person or entity again. An ADAD does not offer the recipient the option of cutting off the calls; it does not offer householders a choice of whether to respond to the speaker or not. The ADAD recipient may hang up as soon as the message starts, but has no opportunity to tell the machine that he does not want it to call again, and may be obliged, against his will, to respond over and over to the same unwanted caller.

. . . .

-12-

Because ADAD calls intrude upon the privacy and tranquility of the home and the efficiency of the workplace, and *because the recipient has no opportunity to indicate the desire not to receive such calls*, we find that the government has a substantial interest in limiting the use of unsolicited, unconsented-to ADAD calls.

59 F.3d at 1555 (emphasis added) (footnotes omitted).

Thus, although "[w]e will not strike down a time, place, or manner regulation merely because we can envision a less-restrictive or more effective means of furthering the city's content-neutral objectives," Excalibur Group, 116 F.3d at 1221, the "narrowly tailored" analysis, where appropriate, takes into consideration the opportunity for the would-be recipient to provide effective notice that the communications are not wanted. When that factor is considered in the present case, the balance tips in favor of striking the ordinances as overbroad because those individuals who do not want handbills placed on their vehicles can quite easily and effectively provide notice, for example, by placing a sign on the dashboard.

In Bolger v. Youngs Drug Prods., 463 U.S. 60 (1983) (Bolger), the Supreme Court revisited the issue of whether a governmental regulation was narrowly tailored or burdened substantially more speech than necessary to further the underlying governmental interest. Bolger involved a federal statute that prohibited the mailing of unsolicited advertisements for contraceptives. The Supreme Court held that the statute affected commercial speech and, although commercial speech is generally accorded less constitutional protection than non-commercial speech, it nevertheless enjoys "substantial protection." Id. at 64-65, 68. The Supreme Court then observed:

[W]e have never held that the government itself can shut off the flow of mailings to protect those recipients who might potentially be offended. The First Amendment "does not permit the government to prohibit speech as intrusive unless the 'captive' audience cannot avoid

-13-

objectionable speech." Recipients of objectionable mailings, however, may "'effectively avoid further bombardment of their sensibilities simply by averting their eyes.'" Consequently, the "short, though regular, journey from mail box to trash can . . . is an acceptable burden, at least so far as the Constitution is concerned."

Id. at 72 (citations omitted). Addressing the regulation before it, the Supreme Court noted that, although the ban on unsolicited contraceptives advertisements helped to screen such materials from the view of children, this "marginal degree of protection" required the government to screen the prohibited material from everybody's mail, even though such materials are "entirely suitable for adults." Id. at 73. The Supreme Court thus concluded "a restriction of this scope is more extensive than the Constitution permits, for the government may not 'reduce the adult population . . . to reading only what is fit for children.'" Id. (quoting Butler v. Michigan, 352 U.S. 380, 383 (1957)). The Supreme Court held that the regulation burdened substantially more speech than necessary to further the underlying governmental interest.

Similarly, in the present case, the ordinances suppress considerably more speech than is necessary to serve the stated governmental purpose of preventing litter. The ordinances prohibit the placement of any handbill on any unattended vehicle, regardless of whether the driver, owner, or an occupant might wish to receive the handbill and notwithstanding the fact that some, if not most, people would not throw on the ground papers left on their cars. While we have no difficulty concluding that the inconvenience of having to dispose of unwanted paper "is an acceptable burden, at least so far as the Constitution is concerned," Bolger, 463 U.S. at 72, that minor inconvenience is not even necessary in the present case because, like the householders in Martin and Rowen, those who do not wish to be left with handbills can quite easily notify distributors of that fact. As the Supreme Court reasoned in Martin and Schneider, defendants' goal of preventing litter can be accomplished by punishing the handbill distributors who defy such notices, as well as the "litterbugs" who choose to throw

-14-

papers on the ground. <u>See</u> <u>Martin</u>, 319 U.S. at 147 ("A city can punish those who call at a home in defiance of the previously expressed will of the occupant."); <u>Schneider</u>, 308 U.S. at 162 ("There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the street.").

Nor do we disagree with defendants' assertion that they may, consistent with prevailing constitutional standards, protect legitimate aesthetic and safety interests through indirect regulations that impose some burden on speech. However, to do so, defendants must demonstrate the existence of a "reasonable fit" between their asserted goal and the means that they have selected to accomplish it. <u>Discovery Network</u>, 507 U.S. at 416 ("It was the city's burden to establish a 'reasonable fit' between its legitimate interests in safety and esthetics and its choice of a limited and selective prohibition of newsracks as the means chosen to serve those interests."). Thus, in <u>Cornerstone Bible Church v. City of Hastings</u>, 948 F.2d 464 (8th Cir. 1991), involving a First Amendment free speech and free exercise challenge to a city's zoning ordinance, this court reversed the district court's grant of summary judgment in favor of the defendant city because there was insufficient evidence that the city had studied the issues or found reliable evidence regarding the effect of the regulated activity (in that case, the location of churches in the central business district) upon the governmental interest presumably being harmed (economic revitalization).

In the present case, notwithstanding defendants' evidence that government officials received complaints about handbills left on cars and that the ordinances were enacted for the purpose of preventing litter, defendants have not established a factual basis for concluding that a cause-and-effect relationship actually exists between the placement of handbills on parked cars and litter that impacts the health, safety, or aesthetic well-being of the defendant cities. This flaw in defendants' position provides an alternative basis for reversing the district court's grant of summary judgment for defendants. <u>Id.</u> at 469 ("The City has not provided factual support for the assumptions that underlie its exclusion of churches, and the alleged secondary effects of churches

on commercial activity remain a disputed factual issue."); cf. Excalibur Group, 116 F.3d at 1221 (affirming grant of summary judgment for defendant where the record "indicate[d] that the city had substantial evidence on which to base its conclusions about the secondary effects of adults-only businesses."). Even if we were to assume that a logical connection exists between plaintiffs' handbilling activities and the actual or potential presence of litter on defendants' streets, that correlation does not necessarily mean the ordinances are narrowly tailored to serve the purpose of preventing litter. Although a governmental restriction does not have to be the least restrictive or least intrusive means of regulation, it may not, under well-established constitutional standards, curtail substantially more speech than is necessary to accomplish its purpose, which is precisely what the ordinances do.

**Conclusion**

We hold that the challenged portions of the ordinances are not narrowly tailored to serve the governmental purpose asserted by defendants. Having therefore determined as a matter of law that the ordinances are facially invalid on overbreadth grounds, we need not address plaintiffs' remaining arguments on appeal concerning their claims of selective enforcement and discriminatory enactment. The judgments of the district court are reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.