**MINORITY POLICE OFFICERS ASSOCIATION OF SOUTH BEND, on behalf of its members and all others similarly situated, et al., Plaintiffs-Appellants,**

v.

**CITY OF SOUTH BEND, INDIANA, a municipal corporation, et al., Defendants-Appellees.**

No. 83–1497.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1983.

Decided Nov. 10, 1983.

Charles F. Curtchfield, Notre Dame, Ind., for plaintiffs-appellants.

Robert C. Rosenfeld, South Bend City Atty., South Bend, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

Eleven policemen in South Bend, Indiana, and the Minority Police Officers Association of South Bend, brought this suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against the City of South Bend and various city officials, alleging that between 1973 and 1981 (when the suit was filed) the defendants had discriminated against blacks and Hispanics both in hiring and in promotions. The individual plaintiffs are black and Hispanic policemen employed by South Bend, and the Association is composed entirely of such persons. The district court, 555 F.Supp. 921, granted partial summary judgment for the defendants on three issues (we ignore a fourth that the plaintiffs have abandoned on appeal): whether claims that accrued prior to two years before the suit was filed are barred by the applicable statute of limitations; whether the suit should be certified as a class action; and whether the plaintiffs have standing to challenge discrimination in

hiring. The district judge's order did not dismiss the complaint in its entirety; the case will go to trial on the issue whether the defendants intentionally discriminated against the 11 individual plaintiffs in regard to promotions. Nevertheless the judge certified his order of partial summary judgment for an immediate appeal under Rule 54(b) of the Federal Rules of Civil Procedure and the plaintiffs have appealed.

The first question we must consider is whether the district judge's order was a final judgment on a separate claim or claims, within the meaning of Rule 54(b), and is therefore appealable before the entire litigation ends. At oral argument the defendants' counsel acknowledged his doubts on this score but explained that he had decided not to contest our jurisdiction because he was content to have us decide the appeal on the merits. We therefore take this opportunity to remind the bar that a federal court does not acquire subject-matter jurisdiction by the consent of the parties, *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.*, 642 F.2d 1065, 1067 (7th Cir.1981), that we have an independent obligation to police the constitutional and statutory limitations on our jurisdiction, and that counsel, as officers of the court, have a professional obligation to assist us in this task.

Rule 54(b) provides that, "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the [district] court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," provided the court, on the basis of "an express determination that there is no just reason for delay," makes "an express direction for the entry of judgment." Unfortunately, it is sometimes unclear whether a complaint or other pleading presents "one claim for relief" or multiple claims. *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co., supra*, 642 F.2d at 1069–71; 10 Wright, Miller & Kane, Federal Practice and Procedure § 2657 (2d ed. 1983); cf.

*Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976). We can get no help from the caption of the judge's order. The word "judgment" in the term "partial summary judgment" is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim.

 It is clear on the one hand that claims can be separate even if they have some factual overlap, see *Local P–171, Amalgamated Meat Cutters, supra,* 642 F.2d at 1070, and on the other hand that they cannot be separate if together they constitute a single cause of action for res judicata purposes, or if the claimant could not recover separately on each claim, *id.* at 1070–71; see also *Cinerama, Inc. v. Sweet Music, S.A.,* 482 F.2d 66, 69 (2d Cir.1973). But these observations do not enable us to dispose of the Rule 54(b) question in this case. There obviously is considerable factual overlap between the claims of discrimination that the district judge held time-barred and those he did not, between the claims of the named plaintiffs and the claims of the class members they would like to represent, and, to a lesser extent, between the claims of discrimination in promotion and the claims of discrimination in hiring. But a separate judgment could in principle be entered on each claim; and a judgment on one claim might not be res judicata on the others, since the time-barred claims and the hiring claims are based on different discriminatory acts from the timely and the promotion claims, and a judgment for or against the named plaintiffs in a case that was not certified as a class action would not be res judicata in a suit brought by other, similarly situated claimants.

Although this is thus not a case of "mere variations of legal theory," *Local P–171, Amalgamated Meat Cutters, supra,* 642 F.2d at 1071, we must delve deeper before deciding that this is a case of genuinely separate claims that could be certified for immediate appeal under Rule 54(b). There are grave practical objections to reading the rule broadly. The caseload of the federal courts of appeals has increased faster than that of any other component of the federal judiciary, and is now eight times as great as it was in 1960, while the number of court of appeals judges has less than doubled. Rule 54(b) liberally construed and applied has a tremendous potential to increase our caseload still more rapidly, because its natural tendency is to generate multiple appeals in the same case. Unlike an interlocutory appeal under 28 U.S.C. § 1292(b), which is allowed only when the district court and the court of appeals agree that the appeal brings up a question of law that may control the entire litigation and thus enable it to be disposed of finally in that appeal, a Rule 54(b) appeal requires only the district judge's certification and is allowed though a part of the case remains for disposition by the district court. Even if we decide all the issues raised by the present appeal, we are quite likely to have to decide a subsequent appeal in this case some day—the appeal from whatever final judgment the district judge enters on the claim of intentional discrimination that remains pending before him. And while each appeal in a series of multiple appeals in the same case should be simpler to decide than would be an appeal from a final judgment disposing of the entire lawsuit, the greater simplicity will usually be outweighed by the burden on this court of having to reacquaint itself again and again with at least the basic facts of the case.

 Therefore the presumption should be against characterizing a pleading as containing multiple claims for relief rather than one claim. If we had our druthers we would hold that claims were never separate for Rule 54(b) purposes if they arose out of the same factual setting, but the Supreme Court rejected this approach in *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956), and *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 451–52, 76 S.Ct. 904, 908–09, 100 L.Ed. 1311 (1956). Decided as they were at a time when the caseload of the federal courts of appeals

was much lighter than it is today, these decisions may be ripe for reexamination; but they are binding on us in the absence of strong evidence that the Supreme Court would overrule them if it had a chance, and there is no such evidence. But we think it is open to us to hold that claims are not separate for Rule 54(b) purposes if the facts they depend on are largely the same, or, stated otherwise, if the only factual differences are minor. The burdens of multiple appeals are greatest in a case where the successive appeals bring up the same facts.

By this test two of the three rulings that the plaintiffs have attempted to appeal are outside the scope of Rule 54(b): the ruling that the statute of limitations bars liability for acts of discrimination committed more than two years before the complaint was filed, and the refusal to certify the case as a class action. In a purely verbal sense both rulings disposed of separate claims: claims based on the time-barred acts, and claims of class members not named as plaintiffs. But the factual overlap appears to be complete. It is true that the alleged acts of discrimination occurred at different times and that those that occurred more than two years before the complaint was filed could not, under the district court's view, support a claim for relief. But the early acts would still be admissible, and would undoubtedly be introduced, to show the defendants' discriminatory motives and the scope and pattern of their unlawful conduct. Cf. *Schwartz v. Eaton,* 264 F.2d 195, 197–98 (2d Cir.1959). So whether we affirmed or reversed the district court's partial summary judgment in favor of the defendants on the time-barred claims, we would have to relearn the same set of facts if and when the case came back to us on appeal from the district judge's final judgment on the timely claims.

The factual overlap is even more complete with respect to the class-certification issue. The only reason the district judge refused to certify this lawsuit as a class action was that he thought the members of the class too few to satisfy the requirements of Rule 23. Their claims are identical to those of the named plaintiffs. In any event, the Supreme Court's decision that refusals to certify actions as class actions are not appealable under the "collateral order" doctrine, *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), implies that they are not appealable under Rule 54(b) either. The argument for appeal that the Court rejected was that such a refusal was sufficiently final as a practical matter to be a "final decision" within the meaning of 28 U.S.C. § 1291 interpreted in light of the "collateral order" doctrine. Since a federal rule of civil procedure cannot enlarge the jurisdiction of the district court (Fed.R.Civ.P. 82), Rule 54(b) only allows appeals from orders that are in some sense final. See, e.g., *Western Geophysical Co. of America v. Bolt Assocs.,* 463 F.2d 101, 102–03 (2d Cir.1972). And since *Livesay* holds that refusals to certify a case as a class action are not final, they cannot be appealed under Rule 54(b) any more than they can be appealed under section 1291 directly.

But when we apply our test (no significant factual differences) to the third issue sought to be appealed—the Association's standing to assert the claims of those blacks and Hispanics whom the defendants refused to hire as policemen—we have to conclude that the Rule 54(b) certification was proper. No doubt there is much factual overlap between the two sorts of discrimination alleged—discrimination in promoting blacks and Hispanics who have been hired as policemen and discrimination in hiring blacks and Hispanics to be policemen—if only because the defendants are the same and the minority groups against which the defendants allegedly are prejudiced are the same. But we cannot say that the only factual differences are likely to be minor ones. Even if the defendants have discriminated in promoting blacks and Hispanics (a question for trial), it does not follow that they must also have discriminated in hiring them; they might have been happy to hire blacks and Hispanics so long as they did not have to promote them to positions of responsibility. It is also rele-

vant to note that the individual victims of the two forms of discrimination (as distinct from the organization that is seeking to represent them) constitute separate, nonoverlapping classes, so that, speaking practically, one can almost say that the district judge entered judgment against separate parties, which is an independent basis for Rule 54(b) certification. We do not want to press the analogy too far; the judge's ruling on the statute of limitations may have barred the claims of some of the named plaintiffs in full, and his ruling on the class-certification issue in a sense barred the claims of any class members not named as plaintiffs, and yet those rulings cannot be appealed under Rule 54(b). But the ruling on standing was not only much like a judgment against separate parties; it also disposed of a claim that, though overlapping the promotion claim that remains in the case, is or may be sufficiently distinct that we cannot say with confidence that the only factual differences are minor. The promotion and the hiring claims not only involve different people but people whose relationship to the defendants—as employees and as applicants for employment, respectively—was different. Thus the issue of the plaintiffs' standing to complain of discrimination in hiring is properly before us on this appeal.

■ All of the named plaintiffs and all other members of the plaintiff Association are employees of the South Bend Police Department. None are unsuccessful applicants for employment. If the Association included such applicants it would have standing to assert their claims of racial discrimination on the authority of such cases as *NAACP v. Alabama,* 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), and *Rockford League of Women Voters v. Nuclear Regulatory Comm'n,* 679 F.2d 1218, 1221–22 (7th Cir.1982), but it does not. And the individual plaintiffs, who are all employees, cannot represent the interests of unsuccessful applicants, all of whom are by definition nonemployees. See, e.g., *Gladstone, Realtors v. Village of Bell-*

*wood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Fisher v. Tucson School Dist. No. One,* 625 F.2d 834, 837 (9th Cir.1980); *Lamar v. Whiteside,* 606 F.2d 88 (5th Cir.1979) (per curiam); *Fairley v. Patterson,* 493 F.2d 598, 599, 604 (5th Cir.1974).

■ The Association might have been able to allege an injury to itself, as distinct from an injury to its members, along the following lines: the fewer black and Hispanic employees the South Bend Police Department has, because of discrimination, the fewer members an association of such employees is likely to have; therefore the Association's revenues and welfare are diminished because of discrimination in hiring. Standing was upheld on this theory in *Chicano Police Officer's Ass'n v. Stover,* 526 F.2d 431, 436 (10th Cir.1975). We need not decide whether this is a good theory of standing; the Association does not allege that its organizational welfare or interests have been adversely affected by the defendants' alleged discrimination in hiring blacks and Hispanics. The Association's theory of standing is that minority police officers share with minority applicants to be officers the same interest in preventing discrimination. This may well be true but as a theory of standing it would allow the Association to complain about hiring discrimination against blacks and Hispanics in Boston or San Diego as well as in South Bend, and it is perfectly clear that such a complaint could not be made the basis of a federal suit. Feelings of solidarity do not confer standing to sue.

The appeal from the district judge's grant of partial summary judgment to the defendants is dismissed for lack of jurisdiction, except with regard to the dismissal of the plaintiffs' claim of hiring discrimination, which is affirmed. No costs in this court.