United States Court of Appeals,

Fifth Circuit.

No. 96-31293

Summary Calendar.

ST. PAUL MERCURY INSURANCE COMPANY, Plaintiff,

v.

FAIR GROUNDS CORPORATION, et al., Defendants,

Fair Grounds Corporation, Defendant-Appellee,

v.

United National Insurance Company, Defendant-Appellant.

United National Insurance Company, Plaintiff-Appellant,

v.

Fair Grounds Corporation, Defendant-Appellee.

Oct. 1, 1997.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

In this insurance coverage case, we must decide whether an exclusion clause in a comprehensive general liability (CGL) policy issued by Plaintiff-Appellant United National Insurance Company (United) to Defendant-Appellee Fair Grounds Corporation (FGC) applies to particular third-party property that was destroyed in a fire on FGC's premises. Concluding that the third-party property in question does not fall within the purview of the "care, custody, or control" exclusion of the policy issued by United to FGC, we

1

affirm.

## I.

### FACTS AND PROCEEDINGS

In December 1993, a fire destroyed the Clubhouse, Grandstands, and Jockey's Room at FGC's racetrack in New Orleans, Louisiana. The fire damaged or destroyed the contents of the burned buildings, including a significant amount of property owned by third-parties. At the time of the fire, FGC had in effect a $2 million CGL policy,[1] issued by United, but that policy excluded from coverage, inter alia, any damage to third party "personal property" in the "care, custody, or control" of FGC. At issue here is the applicability of that exclusion to (1) the computerized wagering equipment, known as the Totalisator System, owned by Autotote Systems, Inc. (Autotote), and (2) the racing equipment owned by sixty-one jockeys.[2]

Autotote's own property insurer, St. Paul Mercury Insurance Company (St. Paul), paid Autotote over $1 million for its losses and filed suit in the district court against FGC asserting

---

[1]At the time of the fire, FGC had a $5 million primary property policy, a $5 million first-layer excess policy, and a $24 million excess policy, but was still woefully underinsured.

[2]The district court determined whether the "care, custody, or control" exclusion applied to other third-party property, including a bugle on loan to FGC from the Louisiana State Museum, office equipment owned by the Horsemen's Benevolent & Protection Association (the HBPA), and a significant amount of food and beverage vending equipment owned by various concessionaires. Those determinations are not challenged on appeal by either party.

Autotote's subrogation rights.[3]  In turn, FGC tendered Autotote's (and other third-party) claims to United, which denied coverage and filed suit in the district court seeking a declaration of non-coverage, based on the "care, custody, or control" exclusion, for all third-party property damaged or destroyed in the fire.  A number of the third-parties also filed suit against FGC, which eventually paid over $205,000 to settle most of those claims.  The district court consolidated United's declaratory judgment suit with St. Paul's subrogation suit.

In August 1995, United moved for summary judgment in the declaratory judgment suit.  FGC filed a cross-motion for summary judgment and sought reimbursement from United for the amounts paid to third-parties in settlement of their claims.[4]  The district court concluded, inter alia, that the property owned by Autotote and the jockeys was not in the "care, custody, or control" of FGC so that the exclusion did not apply to defeat United's coverage.

United filed a motion for new trial or, alternatively, to amend a finding of fact, disputing the district court's finding that FGC did not maintain or derive a monetary benefit from Autotote's property—a finding which undergirded the district

_____

[3]FGC denied liability for Autotote's losses and asserted third-party claims against several parties that it had already sued in state court for their alleged fault in causing or contributing to the fire.  In March 1997, the state court jury awarded FGC approximately $57 million in property damages and business interruption losses, including $285,000 for all third-party property damaged or destroyed in the fire.  This amount did not include an award for the property belonging to Autotote.

[4]FGC moved for summary judgment in the St. Paul subrogation suit also, but the district court denied that motion.

3

court's determination of coverage. Before ruling on United's motion, however, the district judge transferred the case to a newly appointed district judge who ultimately denied the motion. The St. Paul litigation subsequently settled, but United specifically reserved its right to appeal the district court's determination of coverage.

United appealed, asserting that the district court erred in determining that the property owned by Autotote and the jockeys was not in the "care, custody, or control" of FGC and therefore is not excluded from coverage under the policy issued to FGC. In short, United urges us to hold that the subject property is excluded from coverage.

## II.

### ANALYSIS

A. JURISDICTION

FGC contends that United's appeal is premature for want of a certification for entry of a final judgment, pursuant to Federal Rule of Civil Procedure 54(b), as the district court did not dispose of all issues in this matter on summary judgment.[5] Shortly after FGC filed its appellate brief, however, United obtained a Rule 54(b) certificate from the district court. We have previously recognized that a premature notice of appeal is effective if Rule

---

[5]FGC asserts that the district court did not determine FGC's entitlement to (1) penalties and attorneys' fees for United's alleged bad faith in denying coverage or (2) reimbursement from United for amounts paid to third-parties in settlement of their claims.

4

54(b) certification is subsequently granted.[6]  In addition, a declaratory judgment is reviewable as a final judgment,[7] and further necessary or proper relief based on that declaratory judgment may be granted subsequently.[8]  We therefore conclude that we have appellate jurisdiction to hear the instant case.[9]

B. STANDARDS OF REVIEW

We review de novo the district court's grant or denial of a motion for summary judgment, viewing the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party.[10]  Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[11]

---

[6]*Warfield v. Fidelity & Deposit Co.,* 904 F.2d 322, 324 n. 2 (5th Cir.1990) (citing *Crowley Maritime Corp. v. Panama Canal Comm'n,* 849 F.2d 951, 953-54 (5th Cir.1988)).  *See also Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160 (5th Cir.1984) (citing *Jetco Electronic Indus., Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973)).

[7]*See* 28 U.S.C. § 2201(a) (1994).

[8]*See* 28 U.S.C. § 2202 (1994).

[9]The district court issued the Rule 54(b) certificate based on four express, legitimate reasons:  (1) there was no just cause for the delay, (2) St. Paul's consolidated subrogation suit had been settled, (3) FGC's claims for penalties, attorneys' fees, and indemnity were fully contingent on the determination of coverage, and (4) the appellate briefs on the coverage issue had already been filed.

[10]*Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 266 (5th Cir.1995).

[11]*Id.* (quoting Fed.R.Civ.P. 56(c)).

In addition, United appeals the district court's denial of its motion for new trial or, alternatively, to amend a finding of fact. United's motion is a peculiar one to say the least. As no trial was held in the district court, it cannot logically be called a motion for new trial. Alternatively, United asked the district court to amend a finding of fact, pursuant to Federal Rule of Civil Procedure 52(b), but that rule likewise contemplates an underlying trial. Based on the content of United's motion, however, we conclude that it is more properly construed as a request for reconsideration of the district court's entry of summary judgment.[12] Moreover, as the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, we shall treat United's motion as a Rule 59(e) motion to alter or amend a judgment. We review the district court's denial of a Rule 59(e) motion for an abuse of discretion.[13] Under that standard, the district court's decision need only be reasonable.[14] We turn now to the merits of the appeal.

C. AUTOTOTE'S PROPERTY

*1. The Totalisator Service Agreement*

Autotote's property consisted of certain computerized wagering

---

[12]United's memorandum in support of its motion states, "[t]he instant Motion seeks partial relief from a summary judgment entered July 31, 1996."

[13]*Martinez v. Johnson,* 104 F.3d 769, 771 (5th Cir.1997); *Edward H. Bohlin Co., Inc. v. The Banning Co., Inc.,* 6 F.3d 350, 353 (5th Cir.1993); *Batterton v. Texas General Land Office,* 783 F.2d 1220, 1225 (5th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986).

[14]*Bohlin,* 6 F.3d at 353.

equipment, known as the Totalisator System, which had been installed at the racetrack. Autotote and FGC had entered into a "Totalisator Service Agreement" (the Agreement), pursuant to which Autotote agreed to provide to FGC "totalisator services utilizing [Autotote's] computer programs and equipment for all wagering held at the RACETRACK." As compensation for Autotote's services, FGC agreed to pay Autotote, inter alia, 45% of the gross monies wagered through the Totalisator System. The Agreement explicitly provided that the Totalisator System would at all times be and remain the property of and under the exclusive control of Autotote.[15]

United asserts that the Totalisator System was nevertheless in the "care, custody, or control" of FGC such that the exclusion applies to defeat coverage of that property. Specifically, United relies on the provisions of the Agreement that (1) obligate FGC adequately to safeguard Autotote's property and (2) prohibit Autotote from removing the equipment during the term of the Agreement or using it for any other purpose when wagering was scheduled.

*2. Was Autotote's property in the "care, custody, or control" of FGC?*

According to Louisiana law, a provision that attempts to narrow the insurer's obligation, such as an exclusion clause, is

_____

[15]According to the Agreement, however, the junction boxes, wiring, and cabling provided by Autotote and made a part of the fixed installation became the property of FGC upon FGC's payment for the same.

strictly construed against the insurer.[16]  The Louisiana Supreme

Court recently defined "care, custody, or control" for purposes of

an exclusion clause in the context of a CGL policy and announced

two distinct circumstances in which the insured is deemed to have

"care, custody, or control" of property such that the exclusion

applies to defeat coverage:

> The first, and most common, circumstance usually occurs where the insured is either a contractor or subcontractor who has been sued by the owner of the property upon which work was being performed, or is a party with whom property has been placed for use or repair.
>
> ...
>
> The second circumstance under which the insured will be held to have "care, custody, or control" of the property occurs where the insured has a proprietary interest in or derives monetary benefit from the property.[17]

United does not argue that Autotote's property was in the "care,

custody, or control" of FGC as contemplated by first circumstance,

i.e., contractor or subcontractor relationship.  That leaves for us

to determine only whether FGC had a proprietary interest in or

derived a monetary benefit from Autotote's property.  And, as

United concedes that FGC had no proprietary interest in Autotote's

property, the issue stated most narrowly is whether FGC derived a

monetary benefit from Autotote's property.  We conclude, as did the

district court, that it did not.

There is no question but that FGC could not operate its

racetrack business profitably or effectively without the services

---

[16]*Reynolds v. Select Properties, Ltd.,* 634 So.2d 1180, 1183 (La.1994).

[17]*Id.* at 1184 (citations omitted).

8

provided by Autotote and, concomitantly, that Autotote could not fulfill its contractual obligation to provide FGC with computerized wagering services without using its Totalisator System—including its tangible movable (personal) property—on FGC's premises. But FGC did not derive a monetary benefit from Autotote's property itself. Rather, the financial benefit that FGC derived from Autotote's property was nothing more than the indirect business symbiosis of its Agreement with Autotote: FGC benefitted from the racetrack's *profits* which turned, in part, on the efficient services provided by Autotote's effective use of its own equipment. This attenuated, indirect benefit is too remote to come within the kind of monetary benefit required to bring Autotote's property under the "care, custody, or control" exception. In fact, when we examine the relationship between FGC and Autotote from a proper business perspective, we reach precisely the opposite conclusion—it was Autotote and not FGC, United's insured, that was deriving a monetary benefit from the subject property, as it was Autotote that was contractually entitled to a fixed percentage of gross monies wagered through that service and equipment.

Like the district court before us, we conclude that Autotote's property was not in the "care, custody, or control" of FGC. It follows that the subject exclusion does not apply to defeat United's coverage of Autotote's property.

D. THE JOCKEYS' PROPERTY

The jockeys' property consisted of racing equipment owned, used, and maintained exclusively by the jockeys and stored in the

9

Jockey's Room on FGC's premises. Under Louisiana law property belonging solely and unconditionally to a third-party and entrusted to the insured for safekeeping is not considered to be in the "care, custody, or control" of the insured for purposes of that exclusion.[18] The jockeys' property falls squarely into this exception and thus does not trigger application of the "care, custody, or control" exclusion.

III.

CONCLUSION

We hold that Autotote's property was not in the "care, custody, or control" of FGC and that the exclusion does not apply to defeat United's coverage of that property. Likewise, the jockeys' property was not in the "care, custody, or control" of FGC for purposes of applying that exclusion to deny coverage. For the foregoing reasons, the district court's grant of summary judgment as it relates to the property owned by Autotote and the jockeys is AFFIRMED.

---

[18]*Gulf-Wandes Corp., Inc. v. Vinson Guard Service,* 459 So.2d 14, 19 (La.App. 1st Cir.1984), *writ denied,* 464 So.2d 312 (La.1985).