UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 99-30035

_____

GEORGE ELDREDGE; JANIE ELDREDGE LANGUIRAND;
HARTWELL LANGUIRAND,

Plaintiffs-Appellants,

VERSUS

MARTIN MARIETTA CORP.; ET AL.,

Defendants,

LUHR BROTHERS, INC.; MARTIN MARIETTA MATERIALS, INC.,

Defendants-Appellees.

**********************************************

_____

No. 99-30220

_____

GEORGE ELDREDGE; JANIE ELDREDGE LANGUIRAND;
HARTWELL LANGUIRAND,

Plaintiffs-Appellants,

VERSUS

MARTIN MARIETTA CORP.; ET AL.,

Defendants,

LUHR BROTHERS, INC.; MARTIN MARIETTA MATERIALS, INC.;
DRAVO BASIC MATERIALS CO., INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court

1

March 22, 2000

Before JOLLY and DeMOSS, Circuit Judges, and DOWD,[*] District Judge.

DeMOSS, Circuit Judge:

George Eldredge, Janie Eldredge Languirand, and Hartwell Languirand (collectively "Appellants") appeal the district court's orders granting partial summary judgment to Martin Marietta Materials, Inc. ("Martin Marietta"), and Luhr Brothers, Inc. ("Luhr"), and granting summary judgment to Dravo Basic Materials, Inc. ("Dravo"). We affirm the grant of summary judgment to Dravo, but find that the partial summary judgment order as to Martin Marietta and Luhr was not a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and, therefore, we dismiss Appellants' appeal of that judgment for lack of appellate jurisdiction.

## I.

Appellants jointly own property located on the Vermilion River in Louisiana. They claim that various towboat companies sued herein have trespassed on their land and damaged the trees and soil on their property through repetitive use of the trees located on the property for tying off barges in custody of towboats operated by these companies. According to the deposition testimony of George Eldredge, he knew that barges were being tied off to the

---

[*] District Judge of the Northern District of Ohio, sitting by designation.

land and that his father once complained to the local sheriff in the mid-1960s about this practice.  The sheriff, however, took no action, and towboat companies have continued to use the property in this manner over the past few decades.  In 1993, Hartwell Languirand posted signs warning against trespassing, contacted the Coast Guard to complain about the towboat companies, and also cut and removed the ropes and cables that those companies had left on the property.  The Coast Guard allegedly told Hartwell Languirand that word would be passed around to the various towboat companies regarding Appellants' displeasure with the towboat companies' activities, but barges continued to be tied off to the property.

On April 20, 1998, Appellants filed suit in Louisiana state court seeking damages and permanent injunctive relief against Martin Marietta, Luhr, Vulcan Materials ("Vulcan"), and Ingram Barge Lines, Inc. ("Ingram").[1]  Ingram removed the suit to federal court based on diversity jurisdiction on May 15, 1998.  Appellants later added Dravo as a defendant.

Based on the principle of liberative prescription, Martin Marietta filed a motion for partial summary judgment, which Luhr followed.  Despite opposition from Appellants, the district court granted Martin Marietta's and Luhr's motions for partial summary judgment.  Subsequent to this ruling, Dravo filed its own motion for summary judgment and incorporated by reference Martin Marietta's arguments.  That unopposed motion by Dravo was also

---

[1]  Appellants later accepted Vulcan's and Ingram's offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.

3

granted.  After Appellants filed separate notices of appeal, the district court entered judgments pursuant to Rule 54(b).

## II.

Before proceeding to the merits of Appellants' appeal, we must first consider whether the district court's rulings were suitable for entry as final judgments under Rule 54(b) and are, consequently, appropriate for appellate review.  Rule 54(b) allows a district court "[w]hen more than one claim for relief is presented in an action . . . [to] direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Fed. R. Civ. P. 54(b).  It reflects a balancing of two policies: avoiding the "danger of hardship or injustice through delay which would be alleviated by immediate appeal" and "avoid[ing] piecemeal appeals."  *PYCA Indus. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996).

To enter a Rule 54(b) final judgment, the district court must have disposed of "one or more . . . claims or parties."[2]  Fed. R. Civ. P. 54(b).  That requirement is jurisdictional, is reviewed de novo, and may be raised by this court even though the parties may

---

[2]  Furthermore, the district court must make "an express determination that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  This requirement is not jurisdictional and is reviewed for an abuse of discretion. *See* *Samaad v. City of Dallas*, 940 F.2d 925, 930 (5th Cir. 1991).  Where, as here, the parties do not challenge the propriety of the Rule 54(b) judgment, we do not consider sua sponte the district court's determination regarding delay. *See* *id.*

not have challenged it. *See* **Samaad v. City of Dallas**, 940 F.2d 925, 930 (5th Cir. 1991). Additionally, we must look to see whether this requirement is met as to each party or claim. *See*, *e.g.*, **In re Southeast Banking Corp.**, 69 F.3d 1539, 1548-52 (11th Cir. 1995) (finding that a Rule 54(b) final judgment was improperly entered as to certain rulings because they did not dispose of distinct claims, but that it was properly entered as to certain defendants who were completely dismissed).

Because the district court dismissed with prejudice all claims against Dravo, Dravo was no longer a party before that court and the order granting summary judgment is properly on appeal pursuant to Rule 54(b). On the other hand, the ruling as to Martin Marietta and Luhr did not eliminate either as a party because part of Appellants' tort claim, i.e., the non-prescribed portion, remains pending against each of them. Hence, for this Court to have jurisdiction under Rule 54(b), the district court must have resolved a distinct "claim for relief" against each of Martin Marietta and Luhr. The critical issue, then, is whether a statute of limitations ruling that precludes recovery for a certain past time period but allows such recovery for another current time period creates two distinct claims for purposes of Rule 54(b)'s requirement that the district court dispose of one or more claims.

We have never answered this specific question, and no definitive formulation has emanated from the Supreme Court. The Court has recognized that "a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation

of that right, states a single claim for relief." *Liberty Mut. Ins. Co. v. Wetzel*, 96 S. Ct. 1202, 743 n.4 (1976). And several years ago, it held that separate claims could arise out of the same transaction and occurrence. *See* *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 76 S. Ct. 904 (1956). But those judicial crumbs have failed to lead the circuit courts to a concensus as to the handling of this confusing area of law.

Instead, various methods to determine what constitutes a "claim for relief" for purposes of Rule 54(b) have percolated amongst the circuits. One approach "focuse[s] upon the possibility of separate recoveries under arguably separate claims." *Samaad*, 940 F.2d at 931. If the alleged claims for relief do not permit more than one possible recovery, then they are not separately enforceable nor appropriate for Rule 54(b) certification. *See* *Brandt v. Bassett (In re Southeast Banking Corp.)*, 69 F.3d 1539, 1547 (11th Cir. 1995) (concluding that allegations seeking damages against holding company's directors for failing to consider merger possibilities over several years stated one claim because relief could only be recovered once); *Local P-171, Amalgamated Meat Cutters v. Thompson Farms Co.*, 642 F.2d 1065, 1070 (7th Cir. 1981) (Wisdom, J.) ("At a minimum, claims cannot be separate unless separate recovery is possible.").

Another approach "concentrate[s] on the facts underlying the putatively separate claims." *Samaad*, 940 F.2d at 931. If the facts underlying those claims are different, then those claims may be deemed separate for Rule 54(b) purposes. *See* *Jack Walters &*

6

*Sons v. Morton Bldg.*, 737 F.2d 698, 702 (7th Cir. 1984)); *see also*
*Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d
1313, 1316 (9th Cir. 1979).  "By the same token, if there is a
great deal of factual overlap between the decided and the retained
claims they are not separate, and appeal must be deferred till the
latter are resolved."[3]  *Jack Walters & Sons*, 737 F.2d at 702.  A
prime basis for the factual approach is "to spare the court of

appeals from having to keep relearning the facts of a case on
successive appeals."  *Id.*

Finally, at least one circuit has expressed that claims are
not distinct when they are "'so closely related that they would
fall afoul of the rule against splitting claims if brought
separately.'"  *Tolson v. United States*, 732 F.2d 998, 1001 (D.C.
Cir. 1984) (quoting *Local P-171*, 642 F.2d at 1071).

We have yet to resolve which amongst these methods is the
preferable method of discerning what a claim is for purposes of
Rule 54(b), and we decline to do so today.  Rather, in this
unsettled area of the law, we simply note the important cases and
competing methods in existence and earmark them as guideposts for
future deliberations.  We now turn to the case at hand.

In a case analogous to the present situation, the Seventh
Circuit utilized a factual approach to review the propriety of a

---

[3]    Although in *Cold Metal Process*, the Supreme Court held that
separate claims could arise out of the same transaction and
occurrence, that view does not necessarily conflict with the
factual approach.  *See*, *e.g.*, *Minority Police Officers Ass'n v.
City of South Bend*, 721 F.2d 197, 200-01 (7th Cir. 1983).

district court's decision to enter a Rule 54(b) final judgment after issuing a statute of limitations ruling. *See Minority Police Officers Ass'n v. City of South Bend*, 721 F.2d 197 (7th Cir. 1983). Under the facts of that case, the district court had barred liability for racially discriminatory acts beyond a certain time period, but it had allowed the plaintiffs to proceed with allegations based on more recent acts. The Seventh Circuit conceded that "[i]n a purely verbal sense [the] ruling[] disposed of [a] separate claim[]," *id.* at 201, and that "a separate judgment could in principle be entered on each claim," *id.* at 200. However, the court mentioned two points that militated against finding separability: (1) the presumption was against characterizing a pleading as containing multiple claims for relief rather than a single claim; and (2) the acts from the earlier time period would be admissible to prove that the later acts were discriminatory, thus resulting in near-complete "factual overlap" between the alleged claims. *See id.* at 200-01. With such an overlap, the Seventh Circuit reasoned that it would still have to relearn the same set of facts if and when the timely allegations were appealed from the district court's final judgment. As a result, the Seventh Circuit found that the Rule 54(b) final judgment was improper.

We find the Seventh Circuit's analysis in *Minority Police Officers* instructive and conclude that Rule 54(b) was improperly applied as to Martin Marietta and Luhr. In the instant case, facts pertaining to the prescribed portion of Appellants' claim may conceivably be admitted in the pending district court trial to

8

buttress Appellants' allegations that Martin Marietta and Luhr trespassed and damaged the Vermilion property within the prescription period. Those facts may include any evidence identifying the two companies as past trespassers or suggesting that they had a habit or routine of tying off to Appellants' property. In addition, any calculation of damages arising from the non-prescribed portion of Appellants' claim will invariably require a consideration of the facts prior to April 20, 1997, to determine the extent of damages caused within the prescription period.[4]

Hence, we perceive a strong factual overlap between the prescribed and non-prescribed portions of Appellants' claim. Accordingly, the appeal of the partial summary judgment in favor of Martin Marietta and Luhr is dismissed for want of jurisdiction.[5]

## III.

Since the appeal of Dravo's summary judgment is properly before this Court, we must review that judgment de novo to determine whether, viewing the evidence in the non-movant's favor,

---

[4] The intertwined nature of the damages calculation is reinforced by the fact that Appellants essentially seek one total recovery for the alleged cumulative damages caused to their property. That fact also comports with the single recovery test enunciated in *Southeast Banking*, further belying the existence of multiple claims in the present case.

[5] In their brief, Appellants also imply that this court may have jurisdiction pursuant to 28 U.S.C. § 1292(a) & (b). They do not actually discuss those subsections but merely refer to them in the Statement of Issues portion of their brief. An appellant, however, abandons all issues not raised and argued in its initial brief on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994); *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir. 1986) ("Notice pleading does not suffice for appellate briefs."). We, therefore, refrain from addressing these points.

there is no genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *See **Owsley v. San Antonio Indep. Sch. Dist.**,* 187 F.3d 521, 523 (5th Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. 3491, (U.S. Jan. 18, 2000) (No. 99-1205). The district court granted summary judgment for Dravo based on liberative prescription. Under Louisiana Civil Code article 3492, "[d]elictual actions are subject to a liberative prescription of one year." La. Civ. Code Ann. art. 3492. "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable property acquired, or should have acquired, knowledge of the damage." La. Civ. Code Ann. art. 3493. The defendant has the burden of proving that a tort claim has prescribed. *See **Dixon v. Houch**,* 466 So. 2d 57, 59 (La. Ct. App. 1985). If the defendant proves that one year has passed between the tortious acts and the filing of the lawsuit, then the burden shifts to the plaintiff to prove an exception to prescription. *See **id.*** at 60.

Here, Dravo satisfied its burden by offering uncontradicted evidence that it had not conducted any operations in Louisiana since 1995; thus, at least one year had passed between any possible tort by Dravo and the filing of Appellants' suit. Appellants, though, contend that two exceptions apply. First, they argue for the application of the doctrine of contra non valentem. Second, they maintain that Dravo's acts were a continuing tort.

10

Under the doctrine of contra non valentem, the prescription period does not run when "the cause of action is not known or reasonably knowable by plaintiff, even though his ignorance was not induced by defendant." *Landreneau v. Fruge*, 598 So.2d 658, 662 (La. Ct. App. 1992) (citing *Corsey v. State Dep't of Corrections*, 375 So. 2d 1319, 1321-22 (La. 1979)). As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine and only extend its benefits up to "the time that the plaintiff has actual or constructive knowledge of the tortious act." *Bergeron v. Pan American Assurance Co.*, 731 So. 2d 1037, 1042 (La. Ct. App. 1999). That is defined as "'the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry.'" *Id.* (quoting *National Council on Compensation Ins. v. Quixx Temporary Servs., Inc.*, 665 So. 2d 120, 124 (La. Ct. App. 1995)).

Based on the summary judgment evidence, we find that Appellants may not receive the benefits of contra non valentem. According to deposition testimony, Eldredge knew that his father, the predecessor-in-title to Appellants, had noticed damage to the trees caused by the barges starting in the mid-1960s, and that his father had complained to the sheriff. The sheriff, though, took no action, and likewise, the father took no further legal steps to stop the towboat companies from trespassing and damaging the Vermilion property. In 1993, Hartwell Languirand also observed damage to the trees and complained to the Coast Guard. He requested information about the towboat companies causing the

damage, but the Coast Guard was unable to provide him with the businesses' names because he failed to provide enough information about the boats. Although he knew of the damage, Hartwell Languirand did not file suit until 1998. Appellants clearly had knowledge of the tort, at least since 1993, and chose not to exercise their duty to seek out those responsible for their injury in a timely manner. *See* **Tilley v. Kennedy**, 605 So. 2d 226, 228 (La. Ct. App. 1992) (finding that claims of property damage from defective mud were barred because the plaintiffs were told before the prescription period that the mud was causing property damage).

As for the second exception, Appellants assert that the continuing tort doctrine should apply in the present case. Under this doctrine, when tortious conduct and resulting damages are of a continuing nature, prescription does not begin to run until the conduct causing the damages is abated. *See* **Doe v. Doe**, 671 So. 2d 466, 469 (La. Ct. App. 1995). "Typically, courts have found torts to be continuous in nature where each individual act would not necessarily give rise to a cause of action; but instead, the cumulative effect of regularly-occurring or continuous actions results in successive damages from day to day." **Hunter v. Tensas Nursing Home**, 743 So. 2d 839, 842 (La. Ct. App. 1999). Again, this doctrine does not apply in Dravo's case. Appellants have not disputed Dravo's contention that it did not engage in activity near the property within one year of when the suit was filed. Therefore, Dravo cannot have committed a continuing tort that extends into the prescription period, and Appellants' action has

12

prescribed.

**IV.**

For the reasons assigned, we affirm the district court's award of summary judgment to Dravo on the grounds of liberative prescription and dismiss the appeal of the partial summary judgment in favor of Martin Marietta and Luhr for want of jurisdiction.

13