# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2014

No. 13-30516

Lyle W. Cayce
Clerk

TETRA TECHNOLOGIES, INCORPORATED; MARITECH RESOURCES, INCORPORATED,

Plaintiffs - Appellees

v.

CONTINENTAL INSURANCE COMPANY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

DeMOSS, Circuit Judge:

## I.

This appeal arises from an insurance coverage dispute concerning an industrial accident that occurred on a decommissioned platform in the Outer Continental Shelf, approximately 34 miles off the coast of Louisiana. Appellant Continental Insurance Co. ("Continental") is the insurer of Vertex Services, LLC ("Vertex"), an oilfield services contractor. Pursuant to a Master Services Agreement (the "MSA"), Vertex employees performed work for Appellees Tetra Technologies, Inc. ("Tetra") and its subsidiary Maritech Resources, Inc. ("Maritech"). The MSA provides that Vertex must indemnify Tetra and Maritech for any injuries sustained by Vertex employees while

working for Tetra or Maritech, including any injuries caused by Tetra or Maritech's own negligence. The MSA also requires Vertex to make Tetra and Maritech additional insureds on Vertex's general liability insurance policy.

In May of 2011, Tetra and Maritech were involved in salvaging a decommissioned off-shore platform and engaged Vertex to assist in the operation. Abraham Mayorga, a Vertex employee, was assigned to work on the project as a rigger. He worked from the *D/B Arapaho*, a Tetra-owned barge with a large crane. According to the complaint he later filed against Tetra and Maritech, on May 22, 2011, Mayorga's supervisors instructed him to assist several other workers in making cuts to the structures supporting a bridge connecting two sections of the off-shore platform so that the crane on the *D/B Arapaho* could remove it. Mayorga and his co-workers made the cuts and then attached four nylon straps to the bridge, so that the crane could lift it. But, when the crane operator attempted to separate the bridge from the platform, the bridge would not come loose. Mayorga's supervisors directed him and the other workers to walk out on the bridge to determine why it would not come loose, while the crane operator would keep tension on the straps to prevent the bridge from collapsing. While Mayorga and the others were on the bridge, however, one end of the bridge separated from the platform, causing Mayorga and the other workers to fall 70-80 feet into the Gulf of Mexico.

Mayorga and the other workers sued Tetra and Maritech, alleging that both companies had been negligent in the planning and execution of the salvage operation. The complaint also alleged an unseaworthiness claim as to the *D/P Arapaho*. Tetra tendered Mayorga's claim to Vertex for indemnification pursuant to the MSA, which referred the claim to Continental, its insurer. Continental, however, denied coverage. After initiating the proceedings that are the subject of the instant appeal, Tetra and Maritech

No. 13-30516

settled Mayorga's claim. Continental chose not to participate in the settlement discussions.

## II.

### A.

On November 11, 2012, Tetra and Maritech filed a "Complaint for Indemnity" against Vertex and Continental. The complaint alleges that pursuant to "the terms of the MSA, VERTEX is obligated to defend and indemnify TETRA and MARITECH from and against the claims asserted by Mayorga." The complaint further alleges that, "TETRA and MARITECH are additional insureds under Continental Insurance Company General Liability Policy No. ML 0872815." The complaint additionally states that Tetra and Maritech "made formal demand upon VERTEX and CONTINENTAL to defend, indemnify, and hold TETRA and MARITECH harmless from and against the claims asserted by the plaintiff in the Mayorga action, and to indemnify Plaintiffs for any liability, damages, loss, cost, or expense arising out of the Mayorga action, . . . to no avail." The complaint concludes by seeking a judgment declaring that Vertex and Continental

> are obligated to defend and indemnify Plaintiffs from and against the claims asserted in the Mayorga civil action, and to indemnify Plaintiffs for any liability, damages, loss, cost, or expense arising out of the Mayorga action, and this action including payment and reimbursement of attorneys' fees, costs, and expenses incurred by Plaintiffs in: (a) defending the principal demand in the Mayorga action; (b) in [sic] enforcing the contractual obligation of Defendants; and (c) in [sic] prosecuting this action.

Continental answered the complaint and asserted several affirmative defenses based on the terms of the insurance policy. Although an attorney entered an appearance for Vertex, it never answered Tetra and Maritech's complaint and did not meaningfully participate in the district court proceedings.

3

No. 13-30516

On January 31, 2013, Continental moved for summary judgment. It asserted numerous arguments, only three of which it continues to press on appeal. First, Continental argued that the provision of the MSA requiring Vertex to indemnify Tetra and Maritech for their own negligence is void under the Louisiana Oilfield Indemnity Act ("LOIA" or "the Act"), and that, as a result, the additional insured provision of the MSA does not apply to claims by Vertex employees alleging negligence on the part of Tetra and Maritech. Second, Continental argued that, even if the LOIA does not void the indemnification and additional insured provisions of the MSA, Mayorga's claims fall within Exclusion (d) to the insurance policy, which provides that the Continental policy does not extend to "[a]ny obligation of the insured under a workers[sic] compensation, United States Longshoremen's [sic] and Harbor Workers' Compensation Act, Jones Act, Death on the High Seas Act, General Maritime Law, Federal Employers' Liability Act, disability benefits or unemployment compensation law or any similar law." Third, Continental argued that because Mayorga's injury occurred when the crane of the *D/B Arapaho* failed to keep tension on the straps supporting the bridge, his claims also fall within Exclusion (g), which provides that the policy does not provide coverage for claims for "bodily injury . . . arising out of: (1) [t]he ownership, maintenance, use or entrustment to others of any watercraft owned, leased, rented or chartered to any insured."

Tetra and Maritech opposed Continental's motion for summary judgment and filed a summary judgment motion of their own. They argued that the LOIA does not void the indemnity agreement because Vertex's work for Tetra and Maritech related to salvaging a decommissioned, non-producing off-shore platform and therefore did not "pertain to a well," as required by the Act. *See Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 38 F.3d 193, 196 (5th Cir. 1994) (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953

4

F.2d 985, 991 (5th Cir. 1992)).  Tetra and Maritech also argued that Mayorga's claim does not fall within the scope of Exclusion (d).  They asserted that, although Exclusion (d) references claims under "General Maritime Law," it should be construed to exclude coverage only for General Maritime Law claims based on workers' compensation-type employer liability.  Finally, Tetra and Maritech argued that Exclusion (g) does not bar coverage because, while Mayorga's complaint alleged an unseaworthiness claim as to the *D/B Arapaho*, it also alleged several other negligence-based theories of liability that do not depend on Tetra's ownership of the *D/B Arapaho*.

B.

The district court agreed with Tetra and Maritech that the LOIA does not void Vertex's indemnification obligations.  Specifically, the court found that Continental had failed to "offer any evidence that would tend to establish a functional or geographic nexus between any well and the platforms in question."  The district court also agreed with Tetra and Maritech that Mayorga's claim does not fall within Exclusion (d).  It found that because Exclusion (d) refers to General Maritime Law in the context of other laws that provide "for some form of worker compensation or employer liability," it was reasonable to read the provision "as excluding coverage for any form of employer's liability, but not for general liability claims under general maritime law, such [as] those of Mayorga against Tetra and Maritech."

Finally, with respect to Exclusion (g), the court found that Mayorga's complaint alleged liability based both on Tetra's ownership of the *D/B Arapaho* and on actions by Tetra and Meritech that were "completely independent of Tetra's ownership" of the barge.  The court further found that based on the summary judgment record, it was "impossible to determine what if any of Tetra and/or Maritech's liability arises from ownership and/or use of the *D/B Tetra Arapaho* versus other independent sources of liability."

No. 13-30516

Accordingly, the court held that summary judgment was "not appropriate on th[e] issue."

The court then ruled as follows: it denied Continental's summary judgment motion and granted Tetra and Maritech's summary judgment motion, except "with respect to additional insured coverage under the Policy to the extent that Abraham Mayorga's injuries arose out of Tetra's and/or Maritech's ownership, maintenance, or use of the *D/B Tetra Arapaho*." The court later clarified its holding concerning Exclusion (g), stating: "Although the Court has held (and maintains its holding) that coverage may be excluded to the extent that liability is ultimately shown to arise from ownership, maintenance, or use of the *D/B Tetra Arapaho*, this holding cannot result in judgment dismissing any part of the plaintiffs' claim, as questions of fact exist which preclude such dismissal, as stated in the Order and Reasons."

## C.

Subsequent to the court's summary judgment ruling, Continental filed an unopposed motion seeking either certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b). Section 1292(b) permits a district court to certify for appeal an "order not otherwise appealable," when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Rule 54(b), on the other hand, provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b).

6

No. 13-30516

The district court denied Continental's motion for § 1292(b) certification on the ground that there was no "substantial ground for difference of opinion on the questions addressed" in its summary judgment order. The district court agreed, however, to enter judgment pursuant to Rule 54(b). The court explained:

> In this case, the Court finds that there is no just reason for delay. Litigating the factual issues necessary to determine the applicability of the watercraft exclusion will be expensive for all concerned. Given that the personal injury plaintiffs have settled their claims, the parties to this indemnity action would be required to litigate the cause(s) of the bridge collapse in order to determine whether Mayorga's injuries arise out of Tetra's ownership, maintenance, or use of the barge or from some other source. If the Court were to decline to enter final judgment, the parties would be required to proceed to such a trial in order to preserve their right to appeal to the issues ruled upon on summary judgment. Moreover, regardless of the Circuit's decision on this appeal, there is virtually no danger that the Court of Appeals would be presented with the same issue twice. Thus, the Court finds that the equities favoring immediate appeal outweigh the danger of piecemeal appeals.

On April 15, 2013, the court entered judgment "in favor of Tetra Technologies, Inc. and Maritech Resources, Inc. and against Continental Insurance Company." In relevant part, the "Final Judgment" states as follows:

> (1) The contractual obligation of Vertex Services, LLC and Continental Insurance Company to defend and indemnify Tetra and Maritech against the claims asserted by Abraham Mayorga in Civil Action No. 11-2493 (E.D. La.) is not voided by the Louisiana Oilfield Anti-Indemnity Act;
>
> (2) Vertex Services, LLC is obligated to indemnify Tetra and Maritech for any liability, damages, loss, cost, or expense incurred by Tetra or Maritech in defending and settling Mayorga's claims, and in enforcing Vertex's contractual obligations, including but not limited to attorneys' fees and expenses;

7

No. 13-30516

(3)  Liability coverage for Tetra and Maritech as additional insureds under Continental Policy No. ML 0872815 for the claims asserted by Mayorga is not precluded by Exclusion (d);

(4)  Liability coverage for Vertex' contractual obligation to defend and indemnify Tetra and Maritech pursuant to the Master Services Agreement (MSA) between Vertex and Tetra is not precluded by Exclusion (d).

The court's judgment makes no mention of its holdings conerning Exclusion (g).

Continental filed a timely notice of appeal. It argues that the district court erred in finding that the LOIA does not void the provisions of the MSA requiring Vertex to indemnify Tetra and Maritech for their own negligence and to provide insurance coverage for claims alleging the same. It also asserts that the district court erred in finding that Exclusion (d) does not bar coverage. Finally, Continental argues that the district court erred in finding that Mayorga's complaint alleges liability on any ground other than Tetra's ownership of the *D/B Arapaho* and that, as a result, Exclusion (g) also bars coverage for Mayorga's claim. Vertex did not contest Tetra and Maritech's summary judgment motion. It has not filed a notice of appeal and is not an appellant here.

## III.

### A.

This court is "duty-bound to examine the basis of subject matter jurisdiction" in all cases before it, whether or not the parties raise the issue. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). Federal Rule of Civil Procedure 54(b) permits a district court to enter final judgment on "one or more . . . claims." FED. R. CIV. P. 54(b). A district court's rulings concerning a particular claim may be appealed under Rule 54(b) only if the district court has "dispose[d] of that claim *entirely*." *Monument Mgmt.*

8

No. 13-30516

*Ltd. P'ship I v. City of Pearl, Miss.*, 952 F.2d 883, 885 (5th Cir. 1992). "The partial adjudication of a single claim is not appealable, despite a Rule 54(b) certification." *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1039-40 (9th Cir. 1991). Thus, unless a district court's rulings "sound the 'death knell' of litigation in the federal courts" concerning a particular claim, the court cannot enter judgment on that claim pursuant to Rule 54(b). *Baker v. Bray*, 701 F.2d 119, 121 (10th Cir. 1983) (quoting *Korgich v. Regents of N.M. Sch. of Mines*, 582 F.2d 549, 550 (10th Cir. 1979)).

The requirement that the district court must have completely disposed of a claim in order to enter final judgment under Rule 54(b) is jurisdictional and must be "met as to each party." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000). Whether the district court completely disposed of a claim is a question we review de novo and, implicating our jurisdiction, one that we may raise at any time. *Id.* None of the parties addressed in their principal briefs whether the district court fully disposed of any one claim before entering judgment on its summary judgment holdings. In accordance with our duty to ensure that subject matter jurisdiction exists in each case before us, we requested additional briefing from the parties on that issue.

B.

1.

Both sides agree that this case involves multiple parties, with Tetra and Maritech as plaintiffs and Vertex and Continental as defendants. Both sides also assert that Tetra and Maritech alleged only a single claim against Vertex—for indemnification—and that the district court fully disposed of that indemnification claim. Tetra and Maritech argue that the only claim the district court fully disposed of was their indemnification claim against Vertex, while Continental maintains that the district court also entirely disposed of at least one of Tetra and Maritech's claims against it.

No. 13-30516

The judgment states that Vertex "is obligated to indemnify Tetra and Maritech for any liability, damages, loss, cost, or expense incurred by Tetra or Maritech in defending and settling Mayorga's claims, and in enforcing Vertex's contractual obligations, including but not limited to attorneys' fees and expenses." On the one hand, the judgment appears to definitively answer the question of whether Vertex is required to indemnify Tetra and Maritech for Mayorga's claim. On the other hand, the actual amount Vertex must pay to Tetra and Maritech is notably absent from the district court's judgment. It is therefore questionable whether, as both sides contend, the district court entirely disposed of Tetra and Maritech's indemnification claim against Vertex. *See Pemberton v. State Farm Mut. Auto. Ins. Co.*, 996 F.2d 789, 791-92 (5th Cir. 1993) (dismissing for lack of jurisdiction where district court certified for appeal under Rule 54(b) ruling that insurance company owed coverage without stating in final judgment precise amount insurance company was to pay insured in damages). We need not decide that question, however, since Vertex did not appeal the judgment entered by the district court and is not an appellant here. *See Eldredge*, 207 F.3d at 740. We therefore turn to the key issue in this appeal: whether the district court entirely disposed of any one claim against Continental.

2.

Continental's supplemental briefing suggests that Tetra and Maritech alleged two discrete claims against it: (1) a claim seeking a declaration that Continental was required to defend and indemnify Tetra and Maritech against Mayorga's claims and (2) a claim seeking money damages for any losses sustained by Tetra and Maritech resulting from Mayorga's claim, including the fees and costs they incurred in prosecuting the instant action against Continental. It is doubtful at best, however, that Tetra and Maritech's complaint asserts two distinct claims because it seeks both a declaration that

10

No. 13-30516

Continental must indemnify them for Mayorga's claims and a money judgment against Continental. *See Pemberton*, 996 F.2d at 791-92. Continental cites us to *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 338 (5th Cir. 1997), in which we found that we had jurisdiction to review the district court's holding that a policy exception identified by an insurance company did not void coverage. In that case, however, the insurance company initiated the litigation by seeking a declaration of non-coverage. *Id.* at 337. Further, the district court's decision finding that the policy exclusion was inapplicable was dispositive of the question of whether the insurance company owed coverage. *Id.* 337-38. Continental also cites *Jackson v. O'Shields*, 101 F.3d 1083, 1084-85 & n.2 (5th Cir. 1996) as an example of an appeal from a ruling on insurance coverage in a multi-party action. In *Jackson*, however, not only did the insurance company initiate a declaratory judgment action, but the lower court had held that the insurance company had no indemnity obligations at all, which terminated the insurer's involvement with the case. *Id.* at 1084-85.

In any event, we need not conclusively determine whether Tetra and Maritech have asserted one claim or two against Continental because, even if we were to construe their request for a declaration on Continental's indemnity obligations as a single claim, it is clear that the district court did not fully dispose of that one "claim."

3.

The Fifth Circuit "has not expressly adopted a method for determining what constitutes a distinct 'claim for relief' under Rule 54(b)." *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 485 (5th Cir. 2002). Indeed, "[t]here is no generally accepted test that is used to determine whether more than one claim for relief is before the court." 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2657 (3d. ed. 2014). Rather, in determining what constitutes a "claim for relief" within the meaning

11

of Rule 54(b), "various courts focus upon different things but are reluctant to articulate hard-and-fast tests." *Samaad v. City of Dallas*, 940 F.2d 925, 931 (5th Cir. 1991), *abrogated on other grounds by Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 728 (2010). The few Supreme Court decisions concerning Rule 54(b) "have failed to lead the circuit courts to a consensus as to the handling of this confusing area of law." *Eldredge*, 207 F.3d at 740 (discussing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 n. 4 (1976) and *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445 (1956)).

The lack of an articulable standard notwithstanding, our previous decisions provide sufficient guidance for us to determine that the district court did not fully dispose of Tetra and Maritech's indemnification claim against Continental. Specifically, we have held that where a court disposes of an affirmative defense, or even every affirmative defense raised by the defendant, the court still has not disposed of a "claim" for Rule 54(b) purposes unless it makes an express holding as to liability. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1069, 1070 (5th Cir. 1997). Additionally, we have held that where the district court rules on some issues concerning a claim, but "decline[s] to complete the analysis" because there are "fact issues extant," the court may not certify the issues it has ruled on for appeal under Rule 54(b). *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 179 (5th Cir. 2003). Finally, it is clear from our case law that a district court does not resolve a "claim" merely by ruling on a threshold legal issue relevant to that claim. *See Eldredge*, 207 F.3d at 740-42; *see also Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 249 (5th Cir. 2006).

Here, the district court's determination that the LOIA does not void the Vertex indemnity agreement and associated additional insured provisions resolves a legal issue antecedent to Tetra and Maritech's indemnity claim

against Continental; it does not resolve the claim itself.  Similarly, the district court's holding that Exclusion (d) does not bar coverage disposed of one of Continental's affirmative defenses, not the claim against which Continental asserted the defense.  Finally, and most importantly, the district court did not make a final determination as to whether Exclusion (g) bars coverage for Mayorga's claim.  As matters stood after the district court entered judgment, it was possible for Tetra and Maritech to prevail completely or not at all on their indemnification claim against Continental, depending on the resolution of certain "factual issues."  Given those circumstances, the district court had hardly "sounded the death knell" of the litigation between Continental and Tetra and Maritech concerning Continental's indemnity obligations and therefore did not completely dispose of the claim.  *N.W. Enters. Inc.*, 352 F.3d at 179; *Baker*, 701 F.2d at 121.

Continental responds by arguing that the questions concerning the applicability of the LOIA and Exclusion (d) were potentially case dispositive and, however we might have ruled, it was unlikely we would be faced with the same issue in successive appeals.  Continental additionally points to the district court's finding that litigating the applicability of Exclusion (g) will be a potentially long and expensive process.  Continental's arguments are better suited to a § 1292(b) certification, which "is designed to allow for early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation." *Ford Motor Credit Co. v. S.E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981).  Sensibly, however, §1292(b) certification is only available when there "is substantial ground for difference of opinion," which the district court found was lacking in this case.  18 U.S.C. §1292(b).  Thus, what we are presented with here is a request by the district court for us to sign-off mid-litigation on legal questions it considers non-contentions.  Since the inception of the federal judiciary, however, our role has been to review final

decisions of the trial courts, not to tinker with ongoing cases through piecemeal appeals, which waste "judicial energy," create unnecessary delays, and obstruct the pursuit of meritorious claims. *Sherri A.D. v. Kirby*, 975 F.2d 193, 201 (5th Cir. 1992) (citation omitted); *see also Ali v. Quaterman*, 607 F.3d 1046, 1048 (5th Cir. 2010). Indeed, were we to affirm the district court, we would no doubt be required to endure a second appeal concerning the same claim between the same parties, this time reviewing the district court's holdings concerning Exclusion (g). Rule 54(b) does not permit such piecemeal appeals, but rather was "created specifically to avoid" them. *Swope v. Columbian Chems. Co.*, 281 F.3d 185, 192 (5th Cir. 2002). Accordingly, the district court erred in entering judgment under Rule 54(b) against Continental.

For the foregoing reasons, the appeal is DISMISSED for want of jurisdiction.